## MISSOURI, *ex rel.* WALKER *v.* WALKER.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 910. Submitted February 15, 1888. — Decided April 2, 1888.

A contract, made under authority of a statute, by a State with an individual to prosecute at his own expense before Congress and the Departments certain specified claims of the State against the United States, and to receive as full compensation for his services a certain rate of commission on the amounts collected by him, does not confer upon the agent a power, coupled with an interest in the subject of the contract, which makes the contract of agency irrevocable.

*Hall* v. *Wisconsin,* 103 U. S. 5, and *Jeffries* v. *Mutual Life Ins. Co.,* 110 U. S. 305, distinguished.

THIS was an application to a state court of Missouri for a mandamus, which was refused. The relator sued out this writ of error. The case is stated in the opinion of the court.

*Mr. William M. Williams* for plaintiff in error.

*Mr. B. G. Boone,* Attorney General of the State of Missouri, for defendant in error.

The following opinion, prepared by MR. CHIEF JUSTICE WAITE, was delivered by the court as its opinion.

On the 19th of March, 1881, a statute was enacted by the General Assembly of Missouri, authorizing and empowering the Fund Commissioners of the State, if they deemed it expedient, to employ a competent agent to prosecute to final settlement before Congress and the proper departments at Washington certain specified claims of the State against the government of the United States. The agent thus appointed was to give security for the faithful performance of his duties. He was to prosecute the claims at his own expense, and receive, as full compensation for his services, such commissions on the amount collected by him as might be agreed upon between himself and the fund commissioners, not exceeding

five per cent on claims for money that had already been paid out by the State, and fifteen per cent on the others. The officers of the United States were authorized to pay the agent his agreed commissions; but all other payments by the United States must be made to the treasurer of the State. Section 3 of this act is as follows: "Sec. 3. With a view to the prompt and satisfactory settlement of the claims of this State against the government of the United States, and referred to in this act, the adjutant general, state auditor, and other officers of the State having in their possession any papers, accounts, pay-rolls, orders, receipts, vouchers, or other evidences of indebtedness necessary to the establishment of said claims, shall, upon the written order of the governor, deliver to such agent all such papers, documents, pay-rolls, receipts, vouchers, or other evidences of indebtedness, (or authenticated copies of the same, where such copies will answer,) and take his receipt for the same; and in all cases wherein it is held by the government of the United States to be necessary to the establishment of said claims, that such original papers, pay-rolls, vouchers, receipts, or orders, etc., should be filed in the departments at Washington, it shall be the duty of the agent, and he is hereby authorized, to deliver the same to the proper authorities to be so filed, but before delivering the said original papers he shall withdraw from file all authenticated copies of the same heretofore filed by this State, or the agents thereof; and in all cases wherein copies shall not have been made of such original papers, etc., as it may be necessary to file as aforesaid, it shall be the duty of said agent to prepare, or cause to be prepared, and properly authenticate, copies of the same, which copies so made, together with those heretofore made and by him withdrawn from file, as hereinabove provided for, shall be returned by such agent to the proper state officers of this State, and the fact of the return of such copies shall be by said officers respectively, certified to the governor of this State."

On the 28th of November, 1884, the fund commissioners, acting under the authority of this statute, employed John R. Walker as the agent of the State in that behalf, and agreed

that he should receive for his services and expenses the maximum of compensation provided for. Walker accepted the employment, furnished the necessary security, and agreed, in consideration of the compensation specified, to proceed without delay to the prosecution of the claims. It is averred in the petition, that thereafter "he entered upon the discharge of the duties of his said employment, and has continued therein ever since, and has incurred large expense and expended a great deal of time, in and about the collection of said claims under his contract, and has faithfully demeaned himself in the prosecution of the same, and in the transaction of the business so intrusted to him;" but it does not appear, either in the pleadings or the proof, that any specific claim has ever been put in his hands for collection, or that anything has been done by any officer of the State under § 3 of the statute to furnish him the means of proceeding under his employment.

On the 28th of March, 1885, the act of March 19, 1881, was repealed without any saving clause, and on the same day another statute was passed, providing for the authentication and payment of certain claims against the State for military service, and which were of the class in respect to which Walker had been employed as agent. The act then provided for the delivery of these claims "to the agent for the collection of the claims of the State against the government of the United States." Then followed § 8, of which this is a copy: "Sec. 8. It shall be the duty of the said agent of the State to prepare, present, and prosecute to settlement, the demands of the State for reimbursement by the government of the United States, of such sums of money as may be paid out under the provisions of this act; and as full compensation for such services, said agent shall receive the amount of his expenses actually incurred in the prosecution of said work; and when such collection shall have been made, said agent shall file a statement of his said expenses, verified by his oath, with the state auditor, who shall thereupon draw his warrant upon the state treasurer in favor of said agent for the amount of said bill of expense: Provided, however, That the amount paid on said bill of expense shall not exceed five per cent of the amount of the collection so made for the State."

Under this statute the claim of James P. Haynes, public administrator of Ray County, having in charge the estate of John King, deceased, was presented and allowed to the amount of $466.59, and Walker demanded it from the Auditor of State for collection from the United States under his employment as agent pursuant to the act of 1881, but this was refused because that act had been repealed. Thereupon Walker applied to the Supreme Court of the State for a mandamus on the auditor to make the delivery, his position being that the repealing act of 1885 impaired the obligation of his contract with the State under the act of 1881, and to that extent was void. The court denied the writ, and in so doing decided that the employment of Walker was "one of agency, pure and simple," which the State could revoke at its will, as it did by the repealing act. For a review of a judgment based on that decision this writ of error was brought.

The fund commissioners were only authorized to employ an agent for the State, and to agree with him as to the commissions he should receive on the amount collected, as full compensation for his services, and all expenses incurred by him in that behalf. This they did, and there can be no doubt that the agency thus created was withdrawn by the repealing act of 1885, unless a consideration was given for it, or it was so coupled with an interest in the subject-matter of the agency, that is to say, in the claims to be collected, as to make it irrevocable.

There was no consideration in money paid for the employment. The agreement to prosecute the claims faithfully is no more than would be implied in law from the acceptance of the appointment; and the provision for the payment of expenses is only a declaration that the commissions stipulated for shall be in full for services and disbursements. There is nothing, therefore, in the consideration for the employment to prevent this agency from being revoked like any other.

The interest coupled with a power, to make it irrevocable, must be an interest in the thing itself. As was said by Chief Justice Marshall, in *Hunt* v. *Rousmanier*, 8 Wheat. 174, 204, "the power must be engrafted on an estate in the

thing. The words themselves seem to import this meaning. 'A power coupled with an interest,' is a power which accompanies or is connected with an interest. The power and the interest are united in the same person. But if we are to understand by the word 'interest' an interest in that which is to be produced by the exercise of the power, then they are never united. The power, to produce the interest, must be exercised, and by its exercise is extinguished. The power ceases when the interest commences, and, therefore, cannot, in accurate law language, be said to be 'coupled' with it." Such is undoubtedly the rule.

Here there was no actual assignment of the claims or any part of them. Walker had no authority, under his employment, to take the money from the United States except to the extent of his commissions. The vouchers and evidences of debt were not turned over to him. All he could do was to present the claims in the name of the State and as its representative. He could not even get the vouchers or other evidences of debt which were necessary for the establishment of the claim, by application to the proper custodian, but must go to the governor of the State for his written order directing their delivery to him. There is nothing whatever in the transaction, from the beginning to the end, which shows an intention on the part of the legislature to part with any interest in or control over the claims, except to the extent of the commissions of the agent after they had been earned. Walker was given no power to compromise any claim. All he could do was to establish the claim, and, when the State was ready to pay it, take his commissions. Clearly such an agency is not irrevocable in law because of its being coupled with an interest in the thing to be collected. If the vouchers and other evidences of debt had actually been delivered to him for collection, and he had expended time or money under his employment, in endeavoring to make the collection, a revocation of his authority might not require him to return the papers he held until he was compensated for what he had already done; but that is not the question here, because the purpose of this suit is to get possession of new vouchers, not to assert a lien upon such as he already had in hand.

There is nothing in the cases of *Hall* v. *Wisconsin*, 103 U. S. 5, or of *Jeffries* v. *Mutual Life Insurance Company*, 110 U. S. 305, in conflict with this. In *Hall's* case the question was whether his employment was an office, or under a contract for work and labor, and it was held to be under a contract, because, although he was appointed a commissioner to make a "geological, mineralogical, and agricultural survey of the State," the law providing for the survey and for his appointment required that the governor "make a written contract" with him for the performance of his allotted work, and "the compensation therefor;" and it also declared that "such contract shall expressly provide that the compensation to such commissioner shall be at a certain rate per annum, to be agreed upon, and not exceeding the rate of two thousand dollars per annum, and that payment will be made only for such part of the year" as he may actually be engaged in the discharge of his duty as such commissioner. The contract actually entered into was by its terms "to continue till the third day of March, 1863, unless the said Hall should be removed for incompetency or neglect of duty, . . . or unless a vacancy shall occur in his office by his own act or default." In deciding the case it was said: "In a sound view of the subject, it seems to us that the legal position of the plaintiff in error was not materially different from that of parties who, pursuant to law, enter into stipulations, limited in point of time, with a state, for the erection, alteration, or repair of public buildings, or to supply the officers or employés who occupy them with fuel, light, stationery, and other things necessary for the public service." There was in that case a positive contract by the State for employment in a particular service, for a particular term, made under the authority of law ; and because it was such a contract the State could not, any more than a private individual, rescind it at will. The employment in this case, however, has no such provision. There is no agreement as to time, and the matter stands precisely as that of Hall would, if a statute had been passed authorizing a geological, mineralogical, and agricultural survey of the State, and he had been employed to make it and receive for his services a compensation depend-

ent on the amount of work actually done, or the time actually employed. It would hardly have been contended that under such a contract the State could not stop the survey and require Hall to quit work at any time it pleased. The difference between the two cases is the difference in the two contracts.

In *Jeffries's Case* the contract was by an administrator of a deceased person's estate with a firm of attorneys, to prosecute a doubtful claim, "for a portion of the proceeds, with full power to compromise it as they should please," and we held that such an agency was not revoked by the death of the administrator who made the contract and the appointment of another in his place. The question was as to the validity of a compromise made by the attorneys, on that authority, after the death of the first administrator. In the present case there was no authority to compromise. Walker could do nothing to establish the claim. He could not even receive the money belonging to the State after he had got the allowance of the claim by the United States.

We find no error in the record, and the judgment is

*Affirmed.*