CHASE NAT. BANK OF NEW YORK et al. v. SAYLES et al.

(Circuit Court of Appeals, First Circuit. March 29, 1926.)

No. 1882.

1. **Courts** ⬚505—Suit against executors and legatee to enforce assignment of interest in estate held within equity jurisdiction of federal court, though res was in possession of probate court.

Suit against executors and legatee to enforce assignment by legatee of interest in estate *held* within equity jurisdiction of federal court on ground of diversity of citizenship, though res involved was already in possession of probate court having concurrent jurisdiction, the decree rendered being operative against executors personally.

2. **Executors and administrators** ⬚75—Gifts ⬚27—Relationship of executor to legatees is substantially that of trustee; legatee having equitable interest in property of estate which he may transfer by irrevocable gift.

The relationship of executor to legatees and creditors is substantially that of trustee, and legatee has such an equitable interest in the property of the estate that he may effectively transfer or assign the whole or a part thereof by irrevocable gift, which equity will uphold.

3. **Wills** ⬚723—In equity, legatee has equitable interest in property of estate, though such interest may be subject to abatement.

In equity, legatee has, in addition to right in personam against executor, an equitable interest in property of estate to extent of his legacy, though such interest may be subject to abatement.

4. **Gifts** ⬚28(1)—Equitable interest in property may be assigned in whole or in part by gift, which is irrevocable, if intent to pass present interest and delivery so far as possible is shown.

Equitable interests in property may be assigned in whole or in part by gift, and, if intent to pass a present interest and such delivery as subject-matter permits is shown, gift is irrevocable.

**5. Gifts ☞27—Though legatee's right in estate may be only legal chose in action, he may make irrevocable gift thereof, which equity will uphold.** .

If legatee's right to share in estate amounts to no more than a legal chose in action, he may nevertheless make a valid irrevocable gift of such right or interest, which equity will uphold.

**6. Assignments ☞58.**

Assignment of part of a debt or demand is enforceable in equity against debtor, whether he accepts or assents to it or not.

**7. Wills ☞740(4)—Claimant of interest in estate under statutory compromise takes as legatee (Gen. Laws R. I. 1909, c. 312, § 23).**

Right in estate arising from statutory compromise under Gen. Laws R. I. 1909, c. 312, § 23, is same as if will had originally made provision for claimant, who takes as a legatee.

Appeal from the District Court of the United States for the District of Rhode Island.

Action by the Chase National Bank of New York and another against Mary D. A. Sayles and others. From decree dismissing bill (6 F.[2d] 403), plaintiffs appeal. Reversed and remanded.

This is a bill in equity, brought by the Chase National Bank of the City of New York, a national banking association having its principal place of business in New York City, and Frederick K. Rupprecht, a resident and citizen of the state of Connecticut, against Charles O. Read, James R. MacColl, and Kenneth F. Wood, residents and citizens of the state of Rhode Island, individually and as executors of Frank A. Sayles, late of Pawtucket, in the state of Rhode Island, deceased, and Mary D. A. Sayles, a resident and citizen of Rhode Island. After stating the citizenship of the parties and that the matter in controversy exceeds $3,000, exclusive of interest and costs, the allegations of the bill are:

"Second. The said Frank A. Sayles died, domiciled in said Pawtucket, on March 9, A. D. 1920, leaving a last will with five codicils thereto, all of which, as modified by a certain agreement of compromise authorized and approved in and by a certain decree of the superior court for said county of Providence in said state of Rhode Island, entered on May 25, 1920, in a certain cause in equity numbered 5018 and entitled 'Charles O. Read et al., Executors and Trustees, v. Mary D. A. Sayles et al.,' were duly admitted to probate in the probate court of said Pawtucket.

"Third. Thereafter, on March 31, 1920, letters testamentary issued out of said probate court of Pawtucket to the defendants Charles O. Read, James R. MacColl, and Kenneth F. Wood, the executors named in said will and codicils, hereinafter called 'said executors,' and thereafter said executors duly accepted their appointment, and on April 2, 1920, first published in accordance with law the notice of their appointment as such executors in the Evening Times, a daily newspaper published in Pawtucket.

"Fourth. In and by said will and codicils of said Frank A. Sayles, as modified by said agreement of compromise, the defendant Mary D. A. Sayles was bequeathed the sum of four million dollars ($4,000,000), hereinafter called said 'four million dollar legacy.'

"Fifth. Thereafter, on September 15, 1920, the defendant Mary D. A. Sayles executed and delivered to the plaintiff Frederick K. Rupprecht a certain instrument in writing under seal, whereby she assigned and transferred to said Frederick K. Rupprecht, his executors, administrators, and assigns, an interest in said legacy to the extent of fifteen hundred thousand dollars ($1,500,000), of which assignment said executors had immediate notice.

"Sixth. Prior to the time of the entry of the decree authorizing said agreement of compromise, all of the defendants had knowledge that the plaintiff Frederick K. Rupprecht had and intended to assert a large claim against the said executors and the estate of the said Frank A. Sayles, and prior to September 15, 1920, when the defendant Mary D. A. Sayles executed and delivered to the plaintiff Frederick K. Rupprecht the said instrument of assignment, the details of the said claim had been presented to the defendant executors, who had advised the defendant Mary D. A. Sayles thereof, and all of the defendants were aware that the said claim amounted to the sum of two million dollars ($2,000,000). Said assignment was made with the consent and approval of said executors, and, when the said assignment was made, the defendant Mary D. A. Sayles and the said executors intended that it should be accepted by the plaintiff Frederick K. Rupprecht, and both she and the said executors were well aware that he intended to accept it, in full settlement of his said claim against said estate. Because of the said assignment to the plaintiff Frederick K. Rupprecht by the said Mary D. A. Sayles, and in reliance thereon, the plaintiff Frederick K. Rupprecht refrained from formally presenting the said claim for two million dollars ($2,000,000) to the said executors, and refrained from filing the same as a claim against the estate of the said Frank A. Sayles within the

time allowed by law for the presentation and filing of claims, and all of the defendants herein were well aware that the plaintiff Frederick K. Rupprecht failed to present and file, and refrained from formally presenting and filing, the said claim because of said assignment to him by the said defendant Mary D. A. Sayles and in reliance thereon.

"Seventh. On July 6, 1921, in consideration of the sum of one million five hundred thousand dollars ($1,500,000) to him paid by the plaintiff the Chase National Bank, the plaintiff Frederick K. Rupprecht executed and delivered a certain instrument in writing under seal, whereby he sold, assigned, and transferred to the Chase National Bank, its successors and assigns, all his right, title, and interest to the extent of one million five hundred thousand dollars ($1,500,000) in and to said four million dollar legacy and all his right, title, and interest in and to said assignment dated September 15, 1920, and executed and delivered to him by the defendant Mary D. A. Sayles, as aforesaid, of which said assignment to said the Chase National Bank, said executors, and said Mary D. A. Sayles did thereafter receive due notice.

"Thereafter demand was duly made upon said executors on behalf of said Frederick K. Rupprecht and said the Chase National Bank for payment of the amount of said four million dollar legacy assigned by said Mary D. A. Sayles to said Frederick K. Rupprecht and thereafter assigned by said Frederick K. Rupprecht to said the Chase National Bank as aforesaid, namely, the sum of one million five hundred thousand dollars ($1,500,000), which demand was refused, and said executors have made no payment on account of said legacy, either to the plaintiff Frederick K. Rupprecht or to the plaintiff the Chase National Bank.

"After the time for filing claims against said estate had expired, the said Mary D. A. Sayles notified the said Frederick K. Rupprecht and the said the Chase National Bank that she repudiated the said assignment to the said Rupprecht; on information and belief, the plaintiffs aver that such notice of repudiation was given by the said Mary D. A. Sayles at the instance and request of the said executors, and that, at the time when it was given, all of the defendants herein were well aware that the time for filing claims against said estate had expired; and the plaintiffs aver that neither said the Chase National Bank nor said Frederick K. Rupprecht had any notice prior to said assign-

ment from said Frederick K. Rupprecht to said the Chase National Bank or prior to the expiration of said time for filing claims against said estate either that the said Mary D. A. Sayles had any intention of attempting to repudiate her said assignment, or that said executors had any intention of declining to pay to the plaintiffs their interest in said four million dollar legacy.

"Eighth. On information and belief, the plaintiffs aver that said executors have paid to the defendant Mary D. A. Sayles a portion of said four million dollar legacy, to wit, the sum of two million five hundred thousand dollars ($2,500,000), and that at the time of making said payment both said executors and said Mary D. A. Sayles had due notice, as hereinbefore set forth, of said assignments to said Frederick K. Rupprecht and said the Chase National Bank respectively. And the plaintiffs fear that said executors will, unless restrained by order of this court, pay the balance of said four million dollar legacy, to wit, one million five hundred thousand dollars ($1,500,000), to said Mary D. A. Sayles.

"Ninth. On information and belief, the plaintiffs aver that, after all debts and other liabilities of said Frank A. Sayles and the expense of the administration of his estate are paid, there will remain in the hands of said executors sufficient property and funds to satisfy all general and specific legacies under said will, including the interest in said four million dollar legacy, assigned to said the Chase National Bank as aforesaid, to wit, the sum of one million five hundred thousand dollars ($1,500,000), with lawful interest thereon, and that the administration of said estate has reached such a point that it is possible and proper for said executors to satisfy and pay all of said four million dollar legacy with lawful interest thereon.

"On information and belief, plaintiffs aver that the said executors have paid in full certain of the legacies bequeathed by the said Frank A. Sayles in his said last will and codicils thereto, and have failed to pay the said one million five hundred thousand dollars ($1,500,000) to the said the Chase National Bank, because, at their instance and request, the said Mary D. A. Sayles has notified plaintiffs herein that she repudiates her said assignment to the plaintiff Rupprecht as hereinabove averred and alleged.

"Tenth. On information and belief, plaintiffs aver that the defendant Mary D. A. Sayles does not own assets or property of the value of one million five hundred thousand dollars ($1,500,000) other than assets or property which includes, or has been derived

by her from the use of, the two million five hundred thousand dollars ($2,500,000) paid to her on account of the said four million dollar legacy by the said executors as hereinabove averred; that she is without business experience or experience in investing funds, and that the disposition of said portion of said legacy so paid her is now subject solely to her personal inclination."

The prayers were: (1) That the executors be restrained from making further payments out of the funds of the estate on account of the four million dollar legacy to the defendant Mary D. A. Sayles or her assigns or to any one other than the Chase National Bank, its successors and assigns; (2) that Mary D. A. Sayles be enjoined from receiving from said executors any further payments on account of said legacy and that she be restrained from assigning or in any way incumbering or transferring her interest, if any, in and to such part of the legacy as now remains unpaid; (3) that the validity of said assignment now held by the plaintiff bank be determined; that it be determined whether the proper administration of the estate admits of present payment of said assignment; that, if it is determined that it does, the executors be required to pay said sum with lawful interest to the plaintiff bank; otherwise that the executors be directed to retain, subject to the order of the court, sufficient property and assets of the estate to pay said sum of $1,500,000, with lawful interest thereon, until such time as the administration of said estate will permit the payment of said sum, whereupon said executors be directed to pay said sum, with lawful interest, to the plaintiff bank; and that the defendant Mary D. A. Sayles be required to take such action, in said probate court of Pawtucket or elsewhere, as will be necessary or convenient to facilitate such payment; (4) that said executors be required to make discovery of the property and assets in their hands as executors of the estate, and concerning the payments, if any, made by them on account of the four million dollar legacy; (5) that the defendant Mary D. A. Sayles be required to account to the plaintiff bank with respect to any payments heretofore received by her from said executors on account of the legacy, and to pay to the plaintiff bank the sum of $1,500,000, with lawful interest thereon; that she be enjoined from in any way incumbering or transferring the portion of said legacy received by her or any property or assets in which the same has been invested; and that pending the final hearing she be ordered to pay into court the sum of $1,500,000, together-er with a sum sufficient to cover interest thereon to the date of the order or decree herein requiring such payment, or that she be required to pay the same to a trustee to be appointed by the court, to be held subject to the order of the court; (6) that a preliminary injunction pendente lite be granted; and (7) that the plaintiffs may have such other and further relief as may be deemed just and equitable.

To this bill the defendants filed a motion to dismiss in the nature of a demurrer, setting out six grounds: (1) Because the court was without jurisdiction to hear and determine the suit; (2) because the matter involved was a matter of probate subject to determination by the probate courts of Rhode Island; (3) because the controversy was one concerning a res which is already in the possession of another court of concurrent jurisdiction, to wit, the probate court of the city of Pawtucket; (4) because the plaintiffs seek to enforce the payment of a legacy by the executors of an estate, and it does not appear that the executors have filed in the office of the clerk of the probate court in which the will was probated a statement setting out the names of the legatees and the amounts to be paid and the property to be turned over to them respectively, or to be held by themselves as trustees, or that they have failed to comply with the statutes of Rhode Island relating to the filing of said statements; (5) because said bill of complaint does not state facts sufficient to entitle the plaintiffs or either of them to the relief prayed for or to any relief in equity; and (6) because it does not appear in and by said bill of complaint that any consideration was given for said assignment alleged to have been made to the plaintiff Frederick K. Rupprecht by the defendant Mary D. A. Sayles.

After hearing the motion, the District Judge filed a written opinion, in which he expressed the view that a total assignment of a pecuniary legacy by way of gift was enforceable in equity, but a partial assignment was not, unless made upon consideration, and entered a decree dismissing the bill, from which this appeal is prosecuted.

Eldon Bisbee, of New York City, and Charles F. Choate, Jr., of Boston, Mass. (Herbert M. Sherwood, Arthur M. Allen, Sidney Clifford, Roger T. Clapp, Sherwood, Heltzen & Clifford and Hinckley, Allen, Tillinghast & Phillips, all of Providence, R. I., on the brief), for appellants.

Robert B. Dresser and Claude R. Branch, both of Providence, R. I. (Samuel Williston, of Cambridge, Mass., and Edwards & An-

gell, of Providence, R. I., on the brief), for appellees.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge (after stating the facts as above). The defendants have not briefed or argued the first four objections assigned in their motion to dismiss, and we do not purpose to consider them at length. [1] The jurisdiction of the court as a federal court is adequately stated, for the bill alleges diversity of citizenship, and that the amount in controversy exceeds, exclusive of interest and costs, the sum of $3,000.

Then, again, if the validity of the assignment and the rights of the plaintiffs therein could be determined in the probate court of Rhode Island, that in no way affects the general chancery powers of this or of the District Court, the rights of citizens of different states being involved. Waterman v. Canal-Louisiana Bank Co., 30 S. Ct. 10, 215 U. S. 33, 54 L. Ed. 80; Atwood v. Rhode Island Hospital Trust Co. (C. C. A.) 275 F. 513, 24 A. L. R. 156. The proceeding being of the nature stated, it in no way interferes with the due administration of the estate in the probate court, and any decree which may be entered will operate, so far as the executors are concerned, against them personally. Allen v. United States (C. C. A.) 285 F. 678, 683, 684.

[2] In support of the fifth and sixth grounds stated in the motion to dismiss, the defendants contend that, inasmuch as it appears in the bill of complaint that the executors did not promise to pay the assignee, Rupprecht, or his assignee, the bank, there was no novation, and, as no consideration was paid for the assignment, and the assignment was not of the whole, but a part, of the legacy, this proceeding cannot be maintained. The reason asserted for this contention is that the right of a pecuniary legatee is not an equitable chose in action or an equitable right in property, but is a legal chose and a right of the same nature as that of a creditor against his debtor; that the legal title to such a chose cannot be parted with, and no equitable right or interest in or to it passes by assignment without consideration, whether the assignment purports to be total or partial. In other words, their position is that the possessor of a legal title to property cannot part with an equitable title therein, except by way of a declaration of trust, or create therein an interest in the nature of an equitable lien, except by contract based upon consideration; that in this case there was no declaration of trust, so no equitable property interest passed to the assignee, and that, no consideration having been paid, no equitable lien arose; that, had the assignment purported to have been of a total interest, the law would imply a power to sue in the name of the assignor and, if for consideration, the power would be irrevocable although no interest in the subject-matter passed; and that, if the assignment was partial and for consideration, although in such case no authority at law would be implied to sue in the name of the assignor, equity would afford relief because of the consideration paid, but would not aid a volunteer. In its final analysis their contention amounts to this: That the interest of a pecuniary legatee is a legal chose in action; that it cannot be the subject of a gift by way of a total assignment, because no present interest in the subject-matter would pass and the power to sue would be revocable; that, if the gift was a partial assignment, no present interest in the subject-matter would pass, and, being without consideration, equity would not lend its aid.

The plaintiffs' contention is that the interest of a pecuniary legatee is an equitable interest in property; that the executors stand as trustees of the decedent's estate, at least as to the personalty, (1) to pay debts; (2) to carry out the specific legacies; (3) to pay the pecuniary legacies; and (4) to distribute the balance of the estate, if any, among the residuary legatees; or, if the relationship between an executor and a pecuniary legatee is not strictly that of trustee and cestui que trust, nevertheless the right is not a legal chose such as exists between debtor and creditor, but an equitable chose, which the legatee may part with, and that in either case he can pass a present equitable title or interest in the whole or in a part of such legacy by gift or by sale; that, inasmuch as the legatee may part with a present equitable interest, whether that interest be in property or in an equitable chose, if it is by way of gift, and the transaction is executed so far as the nature of the subject-matter permits, as it was by assignment under seal in this case, the gift cannot be revoked, any more than it could have been, had the subject of the gift been a mere chattel; that to establish a completed gift by way of assignment of a pecuniary legacy, whether of the whole or of a part, it is only necessary to show an intention on the part of the legatee to give the whole or a partial interest, and an execution of that intent by such delivery as the nature of the subject-matter permits; that as the delivery

of a deed of gift by the owner of chattels in the possession of a third party under a lease would be an adequate delivery in execution of the donor's intention to make a completed gift (Corning v. Records, 46 A. 462, 69 N. H. 390, 76 Am. St. Rep. 178), so here a delivery of a deed of assignment would be an adequate execution of the donor's intent to constitute a completed gift of a part of the legatee's interest in the legacy; that the essential feature of a gift is that its subject-matter be such that a present interest, legal or equitable, may be parted with by actual or symbolical delivery to the donee in execution of the donor's intent to give; and that equity is not hampered as to remedy, as is the law, in the enforcèment of a gift of a part any more than of a gift of the whole.

After an extended examination of the questions involved, we have reached the conclusion that the contention of the plaintiffs, as above stated, is correct. Without stating the early conception of the law as to the relationship of an executor to creditors and legatees, or wherein it differed from that of a strict trustee, we regard it now settled that it is substantially that of a trustee; that, while his powers in the management and disposition of the property of the estate in some respects, perhaps, may be broader than those of an ordinary trustee, and a person dealing with him in the disposition of its assets may safely assume that he is acting in the line of his duty, unless upon the face of the transaction the contrary appears or he has knowledge of the executor's purpose to be guilty of a breach of trust, nevertheless, in the main, the relationship is that of a trustee and cestui que trust, and the legatee has such an equitable interest in the property of the estate that he may transfer it.

In Jeremy, Eq. Jur. (1828) p. 103, it is said:

"The original and ordinary jurisdiction, in matters testamentary, belongs to the ecclesiastical courts, and it is by virtue of the probate, letters of administration, or letters of administration with the will annexed, that such appointee obtains complete power over the personal estate of the deceased person whom he thus represents. From the conscientious duty, however, which necessarily follows such appointments, this court construes a trust to arise in the executor or administrator for the persons who are entitled to the property or are beneficially interested therein, and, without infringing upon the jurisdiction of the ecclesiastical courts, it enforces execution thereof."

In 1 Pomeroy, Eq. Jur. § 156, it is said:

"The theory of trusts, express and implied, having been established, it was easily extended to certain other analogous subjects, which were thus brought within the equitable jurisdiction. One of the most important of these was the administration of the estates of deceased persons. The relation subsisting between executors and administrators, on the one hand, and legatees, distributees, and creditors, on the other, has so many features and incidents of an express active trust, that it has been completely embraced within the equitable jurisdiction in England, and also in the United States, where statutes have not interfered to take away or abridge the jurisdiction. * * * This jurisdiction at length became firmly established and practically exclusive on this ground of trusts: That the relation between the executor or administrator and the parties interested in the estate is virtually one of express trust, which equity has always had the power to enforce."

In Adair v. Shaw, 1 Schoales & L. 243, 262, it is said:

"The only thing to be inquired in a court of equity is whether the property bound by the trust has come to the hands of the persons who were either bound to execute the trust, or to preserve the property for the persons entitled to it, and the whole jurisdiction of courts of equity in the administration of assets is founded on the principle that it is the duty of the court to enforce the execution of trusts, and that the executor or administrator, who has the property in his hands, is bound to apply that property in the payment of debts and legacies, and to apply the surplus according to the will, or, in the case of intestacy, according to the statute of distributions. The sole ground on which courts of equity proceed in cases of this kind is the execution of trusts, and, if we advert to the cases on the subject, we shall find that trusts are enforced, not only against those persons who rightfully are possessed of the trust property as trustees, but also against all persons who come into possession of the property bound by the trust with notice of the trust, and whoever so comes into possession is considered as bound, with respect to that specific property, to the execution of the trust."

In Green's Adm'r v. Creighton, 23 How. 90, 106 (16 L. Ed. 419), it is said:

"In the court of chancery, executors and administrators are considered as trustees, and that court exercises original jurisdiction over them, in favor of creditors, legatees, and heirs, in reference to the proper execution of their trusts."

In Smith v. Ayer, 101 U. S. 320, 327 (25 L. Ed. 955), the court said:

"The executor, though holding the title to the personal assets, is not absolute owner of them. They are not liable for his debts, nor can he dispose of them by will. He holds them in trust to pay the debts of the deceased, and then to discharge his legacies, and, as in all other cases of trust, he is personally responsible for any breach of duty; and property thus held, acquired from him by third parties with knowledge of his trust and his disregard of its obligations, can be followed and recovered. The law exacts the most perfect good faith from all parties dealing with a trustee respecting trust property. Whoever takes it for an object other than the general purposes of the trust, or such as may reasonably be supposed to be within its scope, must look to the authority of the trustee, or he will act at his peril."

See, also, Sherburne v. Goodwin, 44 N. H. 271, 279, 280; M'Leod v. Drummond, 14 Ves. 353, on appeal 17 Ves. 152; Griffith v. Frazier, 8 Cranch. 9, 24, 3 L. Ed. 471; Blood v. Kane, 29 N. E. 994, 130 N. Y. 514, 15 L. R. A. 490; Marvel v. Babbitt, 9 N. E. 566, 143 Mass. 226; Mechanics' Savings Bank v. Waite, 22 N. E. 915, 150 Mass. 234; Davis et al. v. Newton, 6 Metc. (Mass.) 537, 541; Kent v. Dunham, 106 Mass. 586, 590, 591; Story's Eq. Jur. §§ 581, 593.

[3] These decisions disclose the idea that a legatee has, in equity, in addition to a right in personam against the executor, an equitable interest in the property of the estate to the extent of his legacy, even though his interest may be subject to abatement in case the assets remaining after payment of the debts and expenses of administration may be less than enough to pay his legacy in full.

In New Jersey, as early as 1834, in the case of King v. Berry, 3 N. J. Eq. 44, the matter here under consideration was involved. In that case the assignee of a pecuniary legacy brought a bill in equity against the executors of an estate for an accounting and payment to him of the legacy, and was allowed to recover. The Chancellor, speaking for the court, said:

"They [the assignors] were legatees under a will. Their rights were not common-law rights. * * * For a long series of years legacies have been suable in the Court of Chancery, and that court has now, if it has not always had, a concurrent jurisdiction with the spiritual court. That they may now be sued for in the common-law courts, by the statute, does not alter their essential character. They do not change their nature to suit the law of the court, but the court changes its law, and accommodates itself to their peculiar character. When suits for legacies were first prosecuted in Courts of Chancery they were obliged to adopt the law of the spiritual forums; and so it has been with the courts of common law. 3 Ridg. P. C. 243.

"The character of the right, then, is not altered by making it cognizable, under certain circumstances, in the common-law courts. It remains essentially an equitable interest. It is not barred by the statute of limitation; at least such was the law, and such it is still, in England. * * *

"The claim to a legacy is essentially an equitable, and not a legal claim. That it is an assignable interest cannot be doubted, and the assignment, if it passes anything, must pass the whole right of the assignor." And therefore "it was not necessary to make the assignors parties to this suit."

In 1864 the conclusion reached in King v. Berry was affirmed in Executors of Luse v. Parke, 17 N. J. Eq. 415. In that case it appeared that a pecuniary legatee, whose legacy was to be paid to him when he reached 23, became 23 on April 11, 1862; that in 1860, when he was 21 years old, he assigned his legacy to the petitioner, Parke; that January 29, 1861, he again assigned the legacy to one Vliet, who gave notice to the executors; and that Vliet assigned it to Kennedy, one of the executors. The right of the first assignee was upheld. It was there said:

"The defense is based on the idea that the legacy, like any other chose in action, is not assignable at law; that a mere equitable interest passed by the assignment, the legal title remaining in the assignor; and that, the money having been paid by the executors to the second assignee, without notice of the first assignment, they cannot be prejudiced by the secret equity of the first assignee. But the title to the legacy is not a common-law right. It was held by the Chancellor, in King v. Ex'rs of Berry, 3 N. J. Eq. 54, that a claim to a legacy is essentially an equitable, not a legal, claim, and that the assignment must pass the whole right of the assignor; that there does not remain in the assignor, after the assignment of a legacy, a distinct, subsisting right, capable of being assigned, but that the entire interest passes."

Jenkinson v. New York Finance Co., 82 A. 36, 79 N. J. Eq. 247, 258, was a case where a residuary legatee had made partial assignments of his legacy to four assignees, and the sum of the partial assignments exceeded the amount of the legacy. In that case all the assignees, as well as the assignor and the

executor, were made parties to the bill. And the two previous cases were affirmed. See Voyle v. Hughes, 2 Sim. & Giff. 18; Lambe v. Orton, 1 Dr. & Sm. 125; Matson v. Abbey, 36 N. E. 11, 141 N. Y. 179; Orth v. Kaesche, 118 N. E. 1071, 222 N. Y. 612; Heise v. Wells, 104 N. E. 1120, 211 N. Y. 1; Ensign v. Kellogg, 4 Pick. (Mass.) 1; 1 Williston on Contracts, p. 839, § 439.

In contrasting the present view of the law with that formerly entertained, the court in Henry v. Graves, 16 Grat. (Va.) 244, said:

"Formerly equitable estates and interests were considered as choses in action, and assignments of them were treated only as executory contracts. But a trust or equitable estate is not now considered a chose in action. It is a present interest or estate, and whatever would be the rule of law, if it were a legal estate, is applied in equity to a trust estate. The legal estate follows the trust or equitable estate as its shadow, into whose hands soever the legal estate may descend or be conveyed, except it pass to a purchaser for valuable consideration without notice. Id. 875. A trust or equitable estate or interest may therefore now be assigned in equity, as a legal estate or interest of the same kind might be at law; and effect is given to the assignment as an executed, and not an executory, contract. So that a voluntary assignment of such an estate or interest is valid, if it be complete. Id. 880, 907. So also a voluntary assignment of a chose in action will be effectual at law or in equity, if it be complete; the only question being as to what is necessary to make it complete."

In Brown v. Fletcher, 35 S. Ct. 154, 235 U. S. 589, 59 L. Ed. 374, the rights of a legatee in two trust funds established under a will were held not choses in action within the meaning of section 24 of the Judicial Code (Comp. St. § 991), and that his assignee (the time having arrived under the trust established by the will when the legatee was entitled in one instance to the whole of a trust fund and in the other to $25,000), who had brought a bill in equity against him and the trustee, was not enforcing a contract right or chose in action, but an interest in property. It was there said:

"If the funds [of the trust estate] had been invested in tangible personal property, there is, as pointed out in the Bushnell Case [9 Wall. 387, 19 L. Ed. 736] nothing in section 24 to prevent the holder by virtue of a bill of sale from suing for the 'recovery of the specific thing or damages for its wrongful caption or detention.' And if the fund had been converted into cash, it was still so

far property—in fact, instead of in action—that the owner, so long as the money retained its earmarks, could recover it or the property into which it can be traced, from those having notice of the trust. In either case, and whatever its form, trust property was held by the trustee—not in opposition to the cestui que trust so as to give him a chose in action, but—in possession for his benefit in accordance with the terms of the testator's will."

In answer to the argument that the case related to an assignment of merely a chose in action based on a contract, the court said:

"But here there was no contract and this is not a suit for breach of contract. For whatever may have been the earlier view of the subject (Holmes, Common Law, 407, 409) the modern cases do not treat the relation between trustee and cestui que trust as contractual. The rights of the beneficiary here depended, not upon an agreement between him and Braker, but upon the terms of the will creating the trust and the duty which the law imposed upon the trustee because of his fiduciary position. And a proceeding by the beneficiary or his assignee for the enforcement of rights in and to the property, held—not in opposition to, but—for the benefit of the beneficiary, could not be treated as a suit on a contract, or as a suit for the recovery of the contents of a chose in action, or as a suit on a chose in action. * * *

"The instrument by virtue of which that alienation was evidenced—whether called a deed, a bill of sale, or an assignment—was not a chose in action payable to the assignee, but an evidence of the assignee's right, title, and estate in and to property. Assuming that the transfer was not colorable or fraudulent, the federal statutes have always permitted the vendee or assignee to sue in the United States courts to recover property or an interest in property when the requisite value and diversity of citizenship existed [citing cases]. The equity jurisdiction of such courts extends to suits by heirs against executors and administrators [citing cases] and to suits against trustees for the recovery of an interest in the trust property by the beneficiary or his assignee."

To the same effect see Ingersoll v. Coram, 29 S. Ct. 92, 211 U. S. 335, 53 L. Ed. 208; Stotesbury v. Huber (D. C.) 237 F. 413; Deshler v. Dodge, 16 How. 622, 631, 14 L. Ed. 1084; Bushnell v. Kennedy, 9 Wall. 387, 391, 19 L. Ed. 736; Hotchkiss' Appeal, 95 A. 26, 89 Conn. 420.

[4] It has long been recognized that equitable interests in property may be assigned

by way of gift, that the assignment may be of the whole or a part of the assignor's interest, and that the only material question is whether the circumstances show a completed transaction—an intention to pass a present interest and such delivery of the subject-matter as its nature permits, and that, if they do, the gift is irrevocable. Kekewich v. Manning, 1 De G., M. & G. 176, 187, 188, 189; Henry v. Graves, 16 Grat. (Va.) 244; Ellison v. Ellison, 6 Ves. 656; Sloane v. Cadogan, Sugd. V. & P. (appendix, Am. Ed. 1820), p. 40; Collinson v. Pattrick, 2 Keen, 123; Bentley v. Mackay, 15 Beav. 12; Donaldson v. Donaldson, 1 Ky. K. & J. 711; Curriden v. Chandler, 108 A. 296, 79 N. H. 269; Heise v. Wells, 104 N. E. 1120, 211 N. Y. 1; Grover v. Grover, 24 Pick. (Mass.) 261, 35 Am. Dec. 319; Tarbox, Adm., v. Grant, 39 A. 378, 56 N. J. Eq. 199; Voyle v. Hughes, 2 Sim. & Giff. 18; Lambe v. Orton, 1 Dr. & Sm. 125; Matson v. Abbey, 36 N. E. 11, 141 N. Y. 179, 180; same case, court below, 24 N. Y. S. 284, 70 Hun, 475; In re Thompson's Estate, 190 N. Y. S. 125, 116 Misc. Rep. 453; Orth v. Kaesche, 118 N. E. 1071, 222 N. Y. 612; Thornton on Gifts, secs. 105, 198, 271, 294; 28 Corpus Juris (Gifts), § 45, p. 649; 1 Williston on Contracts, § 439, p. 839; Lewin on Trusts, p. 77.

[5] While we are of the opinion that a legatee's right is an equitable interest in property, nevertheless, if it be assumed, as the defendants contend, that his right is a legal chose in action, we are further of the opinion that, according to the weight of authority, he may make a valid and irrevocable gift of his right or interest, which equity will uphold.

In 3 Pomeroy's Eq. Jur. § 1280, the author, after stating the doctrine of the common law that no action of contract can be maintained, unless there is privity of contract between the plaintiff and the defendant, and supposing the case where B. is indebted to A., or has in his hands a fund belonging to A., who assigns the debt or fund to C., says:

"Equity recognizes an interest in the fund, in the nature of an equitable property, obtained through the assignment, or the order which operates as an assignment, and permits such interest to be enforced by an action, even though the debtor or depositary has not assented to the transfer. * * * In order that the doctrine may apply, and that there may be an equitable assignment creating an equitable property, there must be a specific fund, sum of money, or debt, actually existing, * * * upon which the assignment may operate, and the agreement, direction for payment, or order must be, in effect, an assignment of that fund; or of some definite portion of it. * * * The agreement, direction, or order being treated in equity as an assignment, it is not necessary that the entire fund or debt should be assigned; the same doctrine applies to an equitable assignment of any definite part of a particular fund. The doctrine that the equitable assignee obtains, not simply a right of action against the depositary, mandatory, or debtor, but an equitable property in the fund itself, is carried out into all of its legitimate consequences."

And in a note to this section it is said:

"Some cases and books speak of the interest as merely an equitable lien or charge. That it is more than a lien, and is an equitable property, is plain from the remedy allowed. An equitable lien is never enforced by a suit to obtain possession, much less dominion over the thing; the remedy is, at most, a sale of the thing, so that its proceeds may be applied upon the obligation secured. In this case, however, the assignee recovers possession and dominion of the fund as his own. The only equitable feature of the transaction is, in fact, the mode of transfer."

In substantially all the cases involving the assignment of a legal chose in action in the nature of a debt or deposit, whether by way of gift, sale, or as security, the assignment has been held to vest in the donee, purchaser, or creditor the equitable title in the fund or debt, when the transaction is completed by such delivery as the nature of the subject-matter permits. It has been so held when the debt or fund was evidenced by a note payable to A. or order, unindorsed (Jones v. Witter, 13 Mass. 304, 305, 307; Grover, Adm'r, v. Grover, 24 Pick. [Mass.] 261, 35 Am. Dec. 319; Wright v. Wright, 1 Cow. [N. Y.] 598; Stone v. Hubbard, 7 Cush. [Mass.] 595; Hopkins v. Manchester, 19 A. 243, 16 R. I. 663, 7 L. R. A. 387), by shares of stock (Stone v. Hackett, 12 Gray [Mass.] 227), by a savings bank book or certificate of deposit (Foss, Adm'r, v. Lowell Savings Bank, 111 Mass. 285; Westerlo v. De Witt, 36 N. Y. 340, 93 Am. Dec. 517; Hill v. Stevenson, 63 Me. 364, 18 Am. Rep. 231; Camp's Appeal, 36 Conn. 88, 4 Am. Rep. 39; Tillinghast v. Bradford, 5 R. I. 205; Pierce v. Boston Savings Bank, 129 Mass. 425, 432, 37 Am. Rep. 371), by an insurance policy (Gledhill v. McCoombs, 86 A. 247, 110 Me. 341, 45 L. R. A. [N. S.] 26, Ann. Cas. 1914D, 294; Clark v. Allen, 11 R. I. 439, 23 Am. Rep. 496); by an I. O. U. or due bill

(Emley v. Perrine, 33 A. 951, 58 N. J. Law, 472; Phillips v. Wilson, 25 Ill. App. 427), or by a book account or claim (Curtis v. Walpole Tire & Rubber Co., 218 F. 145, 148, 134 C. C. A. 140; Gray v. Barton, 55 N. Y. 68, 72–74, 140 Am. Rep. 181; Gerrish v. Sweetser, 4 Pick. [Mass.] 374, 376; Weed v. Jewett, 2 Metc. [Mass.] 608, 609, 37 Am. Dec. 115). And, the transaction being completely executed, the assignment or transfer has been held to be irrevocable, whether by way of gift, sale, or as security.

The theory upon which the decisions have proceeded is that the assignment, on being completed, vests in the assignee an equitable interest in the debt or deposit with a power to sue and collect the same; that the power to sue and collect, being coupled with an equitable interest in the debt or deposit, cannot be revoked by the assignor in his lifetime, and is not revoked by his death. The theory of these decisions—that the assignment vests in the assignee an equitable interest in the debt or fund—whether anomalous or not, is unquestionably the one upon which the decisions proceed, and is the only theory upon which many of them can be sustained, whether the assignment is by way of gift or of sale. For instance, it has been held that the assignee of a nonnegotiable note, or one payable to order unindorsed, whether the assignment be for value or not, might maintain an action after the death of the assignor in the name of the executor or administrator of the assignor and collect the claim. If this can be done, it must be upon the theory that an equitable interest in the debt passed to the assignee, and rendered the implied power to sue and collect in the name of the assignor irrevocable; for, if no interest passes by the assignment and the assignor dies, a consideration will not render the power irrevocable. His death will revoke it.

This matter was given most thorough consideration by the Supreme Court more than 100 years ago in the case of Hunt v. Rousmanier, 8 Wheat. 174, 5 L. Ed. 589, in an opinion delivered by Chief Justice Marshall. In that case it appeared that Lewis Rousmanier gave two notes to Hunt for loans of money, and offered to give a bill of sale or mortgage on his interests in the brig Nereus and schooner Industry as security for the notes; that Hunt declined to take either, but took a power of attorney, which recited that it was given as collateral security for the payment of the notes, and that, in case Rousmanier failed to make payment, the notes and all expenses were to be paid out of a sale of his interests in the vessels, which the power of attorney authorized Hunt to make. The vessels were at sea. Before they came to port, Rousmanier died. On the return of the vessels, Hunt took possession of them, and offered Rousmanier's interests for sale, which Rousmanier's executors forbade. To a bill in equity brought by Hunt against the executors to establish his right in the vessels, and setting out the foregoing facts, the executors demurred. It was held that, as no bill of sale, assignment, or mortgage of Rousmanier's interest in the vessels was executed and delivered, and as the transaction was finally consummated in the form it was because the plaintiff, Hunt, declined to take such security, no interest in the vessels passed; that, because of this, the power was a naked one, and was revoked upon Rousmanier's death. It was pointed out that what is meant by a power coupled with an interest is an interest in the subject on which the power is to be exercised, and not an interest in that which is produced by the exercise of the power. The court said:

"We hold it to be clear that the interest which can protect a power, after the death of a person who creates it, must be an interest in the thing itself; in other words, the power must be ingrafted on an estate in the thing. The words themselves would seem to import this meaning. 'A power coupled with an interest' is a power which accompanies, or is connected with, an interest. The power and the interest are united in the same person. But if we are to understand, by the word 'interest,' an interest in that which is to be produced by the exercise of the power, then they are never united. The power, to produce the interest, must be exercised and by its exercise is extinguished. The power ceases when the interest commences, and therefore cannot, in accurate law language, be said to be 'coupled' with it.

"But the substantial basis of the opinion of the court on this point is found in the legal reason of the principle. The interest or title in the thing, being vested in the person who gives the power, remains in him, unless it be conveyed with the power, and can pass out of him only by a regular act in his own name. The act of the substitute, therefore, which, in such a case, is the act of the principal, to be legally effectual, must be in his name, must be such an act as the principal himself would be capable of performing, and which would be valid, if performed by him. Such a power necessarily ceases with the life of the person making it. But if the interest, or estate, passes with the power, and vests in the person by whom the pow-

er is to be exercised, such person acts in his own name. The estate, being in him, passes from him, by a conveyance in his own name. He is no longer a substitute, acting in the place and name of another, but is a principal, acting in his own name, in pursuance of powers which limit his estate. The legal reason, which limits a power to the life of the person giving it, exists no longer, and the rule ceases with the reason on which it is founded."

See, also, Hunt v. Rousmanier, 1 Pet. 1, 7 L. Ed. 27; Taylor v. Burns, 27 S. Ct. 40, 203 U. S. 120, 51 L. Ed. 116; Dickinson v. Central National Bank, 129 Mass. 279, 283, 37 Am. Rep. 351; Crowe v. Trickey, 27 S. Ct. 275, 204 U. S. 228, 240, 51 L. Ed. 454; Walker v. Walker, 8 S. Ct. 929, 125 U. S. 339, 343, 31 L. Ed. 769; Rufe v. Commercial Bank, 99 F. 650, 653–655, 40 C. C. A. 27; Michigan State Bank v. Leavenworth, 28 Vt. 209; Curtis v. Walpole Tire & Rubber Co. (1 C. C. A.) 218 F. 145, 147, 148, 134 C. C. A. 140.

The cases previously cited relating to voluntary assignments or gifts of choses in action could not be sustained on the defendant's theory that no interest in the debt or fund passed by the assignment, for the transaction would be incomplete; nor could the numerous cases where consideration was paid and the assignor died, for, as above stated, the power would be revoked by his death, and, such being the situation, it is "safer to travel the path which the law has trodden, instead of discovering another one, * * * unless it is very certain that the new path will enable us to reach, not only most of the results which have been reached by the old one, but all, or at least all which ought to be reached."

[6] Equity is not hampered, as is the law, in the enforcement of an assignment of a part of a debt or demand. Such an assignment may be enforced in equity against the debtor, whether he accepts and assents to it or not, and by joining the assignor the interests of all parties can be determined in a single suit. This being so, the division of the debt or demand does not subject the debtor to burdens which his contract does not require him to bear. See Palmer v. Palmer, 91 A. 281, 112 Me. 149; Bank of Harlem v. Bayonne, 21 A. 478, 48 N. J. Eq. 246; Todd v. Meding, 38 A. 349, 56 N. J. Eq. 83, 92; Warren v. First National Bank, 38 N. E. 122, 149 Ill. 9, 23, 25 L. R. A. 746; Hinkle Iron Co. v. Kohn, 128 N. E. 113, 229 N. Y. 179; James v. Newton, 8 N. E. 122, 142 Mass. 366, 56 Am. Rep. 692; Voyle v. Hughes, 2 Sm. & Giff. 18; Pearson v. Amicable Assurance Office, 27 Beav. 229; Fowler v. Savings Bank, 21 N. E. 172, 113 N. Y. 450, 453, 4 L. R. A. 145, 10 Am. St. Rep. 479; Jacobs v. Jolley, 62 N. E. 1028, 29 Ind. App. 25; Green v. Langdon, 28 Mich. 221; Carpenter v. Soule, 88 N. Y. 251, 42 Am. Rep. 248; Rogers v. Penobscot Mining Co., 154 F. 606, 615, 83 C. C. A. 380; 16 Law Quarterly Review, 241.

The question whether, on the allegations of the bill, the donor, Mrs. Sayles, is estopped from setting up want of consideration as a defense has been argued at length; but, in view of the conclusion reached on the main questions, it is unnecessary to pass upon it. [7] The nature of Mrs. Sayles' right, though the result of a statutory compromise, is the same as it would have been had the will originally included such provision in her favor. She takes as a legatee. This is the meaning of the statutes of Rhode Island, as construed by its courts. Gen. Laws of R. I. (1909) c. 312, § 23; Barber v. Westcott, 43 A. 844, 21 R. I. 355.

The decree of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion, with costs to the appellants.