## Jenks Estate

*William J. Woolston,* for accountant.

*Townsend, Elliott & Munson,* for guardians.

*David H. H. Felix,* for claimant.

*John E. Power, Jr., Ward Kremer, Richard K. Stevens* and *Seth W. Watson, Jr.,* for remaindermen.

BOLGER, J., June 22, 1956.—In my partial adjudication filed December 2, 1955, I awarded back to the accountant 1/48th of the balance shown therein to be held for William P. Jenks, 2nd, and 1/48th to be held for Judith Jenks Olson. The remaining 23/24ths were awarded to the persons entitled.

Testator gave his entire estate to his executors in trust to pay income to his wife for life and after her death to his surviving children and directed that upon the death of the survivor of his children (which occurred July 30, 1955) principal is to be distributed to the issue of his children per stirpes.

William P. Jenks, 2nd, and Judith Jenks Olson are the children of George Cooke Jenks, who predeceased the last life tenant. It is clear that the interests of these children vested upon the death of their parent, subject to be divested in the event of their death, in which event their issue would be substituted. Their interests in remainder cannot be construed to be contingent.

By joint instrument dated November 2, 1950, and signed by William, January 13, 1951, and by Judith,

January 26, 1951, each assigned one-third of the remainder to their mother, Alma H. Jenks.

It was subsequently delivered by Alma H. Jenks, their mother, to the trustee.

By separate instruments, William and Judith executed and delivered to the trustee revocations of the assignments.

At the audit, Alma H. Jenks appeared and claimed one-third of the interests of each of her children. Each of the children denied the claim and stated that the revocations had been effective because: (a) There had been no consideration; (b) it had been obtained by undue influence; and (c) that each was induced to execute and deliver it because of misrepresentations by the assignee.

All parties appeared at the audit and testified.

Because of the importance of the instrument itself, it is set forth herein as follows:

"TO WHOM IT MAY CONCERN:

"We, WILLIAM P. JENKS, 2nd, of West Belmar, New Jersey, and JUDITH JENKS, of New York City, New York, in consideration of love and affection, care and services, and one dollar and other valuable considerations, given and rendered by our mother, ALMA H. JENKS, of Belmar, New Jersey, do hereby acquit, transfer and assign over, fully and absolutely, to the said ALMA H. JENKS, our mother, a one-third part or share of the moneys and estate payable to us, and to which we are entitled as children of George Cooke Jenks, who was one of the children of William P. Jenks, and William P. Jenks was the son of William H. Jenks who died leaving a last will and testament, under which said will, by the several terms and conditions thereof, the said WILLIAM P. JENKS, 2nd, and JUDITH JENKS will receive a certain part or share thereof.

"It is the intention of us, the said children of ALMA H. JENKS to presently vest in her a one-third part or share of said estate which will be payable to us on the death of the said William P. Jenks.

"We further state that this document is executed freely and voluntarily in order that our mother, the said ALMA H. JENKS, shall receive from us, or the proper representative of the estate of the said William H. Jenks, a one-third part or share of the estate which will be payable to us as aforesaid, and by our signatures hereto, we authorize and direct the person or corporation representing the estate of William H. Jenks to pay to our mother, ALMA H. JENKS, a one-third part or share of the estate which will be payable to us as aforesaid. This assignment shall be binding on the parties hereto, their heirs, administrators, executors and assigns.

"IN WITNESS WHEREOF, We, William P. Jenks, 2nd, and Judith Jenks, have hereunto set our respective hands and seals this 2nd day of November, nineteen hundred fifty.

"Signed, Sealed and Delivered
in the Presence of:

            Sgd. William P. Jenks, 2nd  (LS)
            William P. Jenks, 2nd

"Dorothy E. Raffetto
as to William P. Jenks, 2nd
and as to Judith Jenks

            Sgd. Judith Jenks          (LS)"
            Judith Jenks

Counsel representing both sides of the controversy agree that because the instrument was executed and delivered in the State of New Jersey where all the parties resided, the law of New Jersey and not of Pennsylvania controls: Restatement of Law, Conflict of Laws, §332.

The instrument in question is under seal, was formally acknowledged and recites as the consideration for its execution the following: ". . . love and affection, care and services, and $1.00 and other valuable considerations given or rendered by our mother . . .". In behalf of the children it is claimed that there was a failure of consideration and that the seal is not sufficient to import consideration. The principal testimony by the children indicates that they were induced to sign because their mother represented to them as a fact that she had never received any assistance for their care and upbringing from their grandparents, William H. Jenks and Bertha Jenks, his wife. The children contend that it was solely in reliance upon this statement that each signed the assignment.

Ample testimony was given that Alma Jenks had received substantial sums from her husband's parents which money was used by her for the care and support of the children.

William stated that he and his sister had resided approximately three years with their grandparents at Morristown, N. J. Afterward they lived with their maternal grandparents and later attended private schools where he knew their tuition had been paid by the grandparents. He also knew that in 1937 or 1938 his grandparents had set up his mother in business by advancing a certain sum of money. He stated that he knew that his mother had been employed because it was economically necessary for her to work and at the time he executed the assignment, he knew that his mother's financial condition was not good. At or about that time he had just been married. Some time subsequent to the assignment, his mother showed him papers indicating that she had received financial assistance from Mr. Jenks, whereupon William revoked his assignment. At the time he revoked, he had no idea how much money his mother had received during his

infancy, childhood and youth. He later ascertained that the assistance had been substantial.

Judith testified that she knew that her grandparents had contributed toward her education while she was attending a private school. She also revoked the assignment without any specific knowledge of the extent to which her mother had been assisted. Her revocation resulted from a conversation she had with her brother. Judith further stated that her mother had been good and kind and attentive to her needs.

Both witnesses stated that their mother importuned them on numerous occasions before they actually signed the instrument. William stated that she had requested him for a period of between two and three years. Judith also stated that for several years prior to her attaining age 21 her mother had referred to the assignment and in doing so had always insisted that she never received any financial help from the grandparents. Judith further stated that she did not fully read the assignment at the time she executed and delivered it.

Mrs. Jenks, the assignee, stated that her marriage to her husband terminated with his death in 1931. He left no estate and following his death she went to Europe for her health at the expense of her husband's parents. The children who were quite young stayed with her father-in-law and mother-in-law. Upon her return from Europe she married a second time. This marriage lasted six weeks and terminated in a divorce. Following the divorce, the children again lived with their paternal grandparents or their maternal grandparents and Mrs. Jenks procured a job in New York. In 1937 Mrs. Jenks opened a dress shop at Asbury Park which she operated for about two years. She procured various employments from time to time and maintained a home at Asbury Park. The witnesses testified that she did not tell them how much assistance

she received from their grandparents, but affirmatively stated that they did know that she had received money and that she did not bring any pressure on either child.

Evidence was introduced to show that Alma Jenks had sued her father-in-law in New York on a contract in which defendant was alleged to have agreed to pay $100 a week to Alma Jenks for the support of her children. The suit was settled and it was agreed that she would receive regular stipends and with certain variations the agreement remained effective until the children became selfsupporting.

This case has two aspects: Did the children intend to make an assignment of their remainder interest to take effect in the future, or in the alternative did they intend to make a present gift of the future interest? If the instrument is an assignment, it is an equitable assignment, i.e. one enforceable only in equity. Such assignments generally, if they are to take effect in the future, must be based upon actual consideration: 6 C. J. S. 1055, §§11 & 12(b). The law today is clear that although a seal imports consideration, it amounts only to a presumption and is easily overcome by evidence to the contrary: 6 C. J. S. 1200, §140(3).

In New Jersey love and affection are not sufficient consideration (Pascali v. Hempstead, 8 N. J. Super. 40), nor are past services by a child valid consideration for an executory promise. The law in Pennsylvania is to the contrary: Sutch's Estate (No. 1), 201 Pa. 305.

It might in this respect be interesting to explore the effect of modern support laws which place affirmative legal duties on persons within the family relationship. These statutes establish a quasi contractural obligation on parents and children. It is a fact, however, that the decided cases of both New Jersey and Penn-

sylvania recognize that services of a parent to a child are given gratuitously without expectation of remuneration and hence claims for compensation in the absence of an express contract are generally dismissed: Updike v. Titus, 13 N. J. Eq. 151.

In Cockrell v. McKenna, 103 N. J. L. 166, the distinction is made between an executory promise and a deed of conveyance. By way of dictum, the court states that love and affection are sufficient consideration for a deed because upon its execution and delivery title to the land passes and the contract is no longer executory, which is not the case in a promissory note as nothing passes under the instrument until it is paid. A consideration of this character will support a contract as between the parties when executed, but will not support an action to enforce an executory contract. For reasons stated below, the contract of assignment involved in this case intended to pass one-third of the right of each child to receive as a remainderman. It was not an undertaking on their part to pay their mother at some future date. This was not an assignment payable by the children at some future date. It was a present assignment executed, delivered and accepted by the trustee. It could not be revoked.

The assignment is also enforceable as evidence of a gift. The instrument itself is almost conclusive as an expression of the intention of the children. The only paragraph expressing intent is clear and unambiguous. It reads: "It is the intention of us, the said children of Alma H. Jenks, to presently vest in her a one-third part or share of the said estate which will be payable to us on the death of William P. Jenks." The phrase "which will be payable to us" is descriptive of the interest and refers to the time of distribution, viz., the termination of the intervening life estate. It cannot be construed as a promise to be fulfilled by the assignors.

In the next paragraph, however, such a promise might appear to be expressed in the following language: "We further state that this document is executed freely and voluntarily in order that our mother, the said ALMA H. JENKS, shall receive from us, or the proper representative of the estate of the said William H. Jenks, a one-third part or share of the estate which will be payble to us as aforesaid . . ." There then follows the usual authorization to the trustee to make distribution to Alma H. Jenks without any further order from the assignors. The language "shall receive from us or the proper representative of the estate" takes cognizance of the fact that a partial assignment must be accepted by the person in possession of the property which is the subject of the assignment: Geist's Appeal, 104 Pa. 351.

The recital of the instrument which states that it was given "in consideration of love and affection, care and services . . ." does not negative the expressed intention to make a present gift. It is clear that the word "consideration" was not intended to be used in its technical or legal connotation but was intended to express the reason which motivated the gift. The auditing judge finds that by its language the instrument spells out an intention to make the gift. It is claimed, however, that the assignment was procured by undue influence practiced by the mother. During the early years of their childhood and youth a confidential relationship existed between the parent and the children. The dependency which both children were obliged to place upon their mother had terminated at the time this assignment was executed. William was married and no longer a part of the household. Judith was employed in New York and selfsupporting. Both were independent of their mother.

The law has long recognized that influence exerted by a near relative may be legitimate and persuasion,

although indelicate and importunate solicitation do not constitute undue influence.

With reference to misrepresentations both of the children assert that had it not been for their mother's repeated statement that she had received "not a penny" from the Jenks family to assist her in supporting the children, they would not have signed and delivered the assignment. In proof of this as soon as they both learned that she had received money for that purpose without any definite knowledge of the extent or amount, they revoked the assignment. The children would have the auditing judge believe that their belief in the fact that their mother had never received help was not merely a factor, but the sole inducement for the assignment.

In view of the language of the instrument itself which both adopted by their signatures and of the testimony adduced at the trial, the auditing judge does not believe that the children were motivated solely or even substantially for the reason they have assigned.

They both knew that while they lived with their paternal grandparents, their mother did not contribute to their support. They knew when they attended private schools Mr. and Mrs. Jenks, their grandparents, paid for their tuition, clothing and board. They admitted they knew their grandparents had set their mother up in business. The children are intelligent young people. They made no attempt to verify the alleged statements of their mother; when they revoked they made no effort to ascertain the degree of help which their mother had received. They have insisted that having been informed that no money was ever received when substantial sums had been paid to her, they were duped. The auditing judge believes that these children were motivated to make this gift to their mother as compensation for past services, their solici-

tude for her economic condition and their desire to give her financial security. The auditing judge finds that there was no misrepresentation which induced the children to make the gift.

There can be a valid gift of a future interest: Chase National Bank of New York v. Sayles, 11 F. 2d 948; Biddle v. Biddle, 363 Pa. 426. An assignment is the method whereby a gift is completed since it is impossible to deliver by possession. This assignment completely divested the children of their right to possession of one-third of their remainder interest. Execution and delivery of the instrument completed the gift. The 1/24th interest in the balance awarded back to the accountant in my adjudication of December 2, 1955, is awarded one-half each to William H. Jenks, 2nd, and Judith Jenks Olson, subject to payment by the accountant of one-third to Alma H. Jenks. Payment will be reflected in a schedule of distribution ordered under my adjudication of December 5, 1955, and not as yet filed. . . .

And now, June 22, 1956, the account is confirmed nisi.