STATE, BY MITCHELL, ATTORNEY-GENERAL, *ex rel.* GARRISON, *v.* McLAURIN.

STATE, BY MITCHELL, ATTORNEY-GENERAL, *ex rel.* JACOBS, *v.* PROVINE.

(In Banc. Nov. 17, 1930.)

[131 So. 89. Nos. 29148, 29150.]

**George T. Mitchell,** Attorney-General, of Tupelo, and **Butler & Snow,** of Jackson, for appellants.

**J. F. Barbour,** of Yazoo City, for appellees.

Green & Green, and Chalmers Potter, all of Jackson, for appellees.

194

Argued orally by **Geo. T. Mitchell**, Attorney-General and **Geo. Butler**, for appellants, and by **Garner Green**, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

The attorney-general filed in the court below an information in the nature of a quo warranto in each of these cases in the name of the state, on behalf of the relators, to try the right to what the informations designate a public office. Demurrers to these informations were sustained, and they were both dismissed.

It appears from the informations that, on the 17th day of May, 1926, the respondents were appointed as members of the state hospital removal, etc., commission, created by chapter 115, Laws of 1926. They accepted this appointment, qualified therefor, entered upon the dis-

charge of their duties, and are now claiming the right to continue to discharge them.

The statute does not fix the commissioners' term of service, but proceeding on the theory that, by virtue of section 3456, Code of 1906, section 2988, Hemingway's 1927 Code, their term of service is four years, and therefore expired four years after their appointment, the governor, on the 2d day of June, 1930, appointed the relator Garrison as the successor of the respondent McLaurin, and the relator Jacobs as the successor of the respondent Provine.

Section 1 of chapter 115, Laws of 1926, provides: "That there is hereby created a state hospital removal, improvement and land sale commission, which shall be, and is hereby, charged with the duty of carrying out the provisions of this act, and shall be referred to in the succeeding sections hereto as 'the commission.' Said commission shall consist of the governor of Mississippi, who shall be ex officio president of the commission, the superintendent of the state hospital at Jackson, and three commissioners to be selected and appointed by the governor. In the event of the death or resignation of the governor, or the superintendent of the state hospital at Jackson, their successors in office shall succeed them as members of this commission; and in the event of any vacancy upon said commission from the other three commissioners, any such vacancy shall be filled by selection and appointment of the governor. Provided that the words 'state hospital' shall refer to the institution heretofore known as the 'state hospital for the insane.' "

The duties of the commission are set forth in the statute in great detail, and, in substance, are that it is to construct and equip, on a designated lot, buildings that will be necessary to house the state hospital for the insane, which is to be removed from the present site thereto; to sell the land on which the hospital is now located, and to issue bonds, in a stipulated amount, the proceeds of which are to be used by the commission in defraying the expenses incurred by it in the discharge of its duties.

The statute provides that: "The three commissioners appointed by the governor shall each receive a compensation of ten dollars per day for the time actually engaged in and about the work contemplated under this act, but shall not receive more than one thousand dollars per year each," and also provides that all duties of the commission shall be discharged "as speedily as possible, in the discretion of the commission." The land on which the hospital is located, most of which is in the city of Jackson, is to be subdivided into city lots and sold by the commission for cash, or on deferred payments, running through a series of five years, promissory notes for the deferred payments to be made payable to the state treasurer.

Section 20 of the state Constitution provides that: "No person shall be elected or appointed to office in this state for life or during good behavior, but the term of all offices shall be for some specified period."

Section 3456, Code of 1906, section 2988, Hemingway's 1927 Code, provides that: "The term of office of all officers, not otherwise provided for by law, shall be four years and until their successors shall be duly qualified."

The question presented for decision is this: Are the terms of service created by chapter 115 of the Laws of 1926 public offices within the meaning of these sections of the Constitution and the Code?

A position is a public office, under all of the former decisions of this court, when it is created by law, with duties cast upon the incumbent which involve an exercise of some portion of the sovereign power, in the performance of which the public is concerned, and which also are continuing in their nature; while a public employment, on the other hand, is a position which lacks one or more of the foregoing elements.

Counsel for the appellants find no fault with this definition, their contention being that all of the elements thereof are included in the duties imposed by the statute

on the state hospital removal, etc., commission; that, while this court has said that the duties of an office must be continuing in their nature, it has never defined that term, and, as we understand their argument, that duties are continuing in their nature when they require the doing of more than a single act, and extend over an appreciable period of time.

The courts of several of the states, the decisions of which are relied on by the counsel for the appellants, hold that a public office is created, although the duties thereof "are not continuing in their nature," but are only special and transient. These decisions are of little value here, for they either ignore the element of continuity of duties in a public office, or so define that element as to practically eliminate it altogether.

The first case that seems to have held that duties continuing in their nature are essential to a public office is United States v. Maurice, 2 Brock, 96 Fed. Cas. No. 15,747, tried by Chief Justice MARSHALL, while on circuit, wherein he held that a public office was created by the delegation by Congress of public duties that were to continue indefinitely. That case was cited and followed in Shelby v. Alcorn, 36 Miss. 273, 72 Am. Dec. 169, wherein our predecessor, the High Court of Errors and Appeals, said "that where an employment or duty is a continuing one, which is defined by rules prescribed by law and not by contract, such a charge or employment is an office, and the person who performs it is an officer." So, also, said that court in Hill v. Boyland, 40 Miss. 625, and this court in McClure v. Whitney, 120 Miss. 374, 82 So. 259.

It is true that in the Maurice case the Chief Justice did not define the word "continue," but it is clear, as was said in Bunn v. People, 45 Ill. 397, decided in 1867, that what he meant by the words, "if those duties continue," was that the duties should be enduring and permanent, and not special and transient. This definition

of the word "continue" is in accord with the lexicographers, Webster's New International Dictionary, and is supported by the weight of judicial authority, including the Supreme Court of the United States.

In Sheboygan County v. Parker, 3 Wall. 93, 18 L. Ed. 33, that court held that the discharge of public duties does not make the person discharging them a public officer unless they are discharged "continuously, and as a part of the regular and permanent administration of government."

In 46 Corpus Juris, 968, it is said that: "The term 'office' used in a constitutional provision that the term of all officers, with stated exceptions, shall be for a specified period, means a public station, permanent in character, and the term 'officer' means a person holding such a station. And the appointment of certain individuals to perform duties in connection with the construction of a single specified public improvement is not within the constitutional provision." This statement is supported by numerous authorities there cited, and collated in 46 C. J. 922 et seq.; 17 Ann. Cas. 451; 72 Am. Dec. 182; 63 Am. St. Rep. 189, and 53 A. L. R. 595; among which are Evans v. Beattie, 137 S. C. 496, 135 S. E. 538; Metcalf v. Mitchell, 269 U. S. 514, 46 S. Ct. 172, 70 L. Ed. 384; State v. Kennon, 7 Ohio St. 546; Patton v. Board of Health, 127 Cal. 388, 59 P. 702, 78 Am. St. Rep. 66; Craig v. O'Rear, 199 Ky. 553, 251 S. W. 828, 829, and Walker v. Cincinnati, 21 Ohio St. 14, 8 Am. Rep. 24.

But it is said by counsel for the appellants that, while the appointments of the commissioners to be made under chapter 115, Laws of 1926, are not in terms for life, nevertheless, if section 3456, Code of 1906, section 2988, Hemingway's 1927 Code, does not apply thereto, the commissioners can prolong their terms by delaying the execution of their duties during the whole period of their lives. If this were true, that fact would be of no con-

sequence, for the length of time required for the performance of special and transient duties is not the test by which to determine whether or not the person discharging those duties is a public officer or an employee. Bunn v. People, 45 Ill. 397. But the commissioners have no such right, for the statute contemplates that their work shall be done with reasonable dispatch.

It is also said by counsel for the appellants that, if the respondents are not public officers, they hold their terms of service by contract, and therefore the statute under which they were appointed cannot be repealed. By this, we presume they mean that a repeal of the statute would not relieve the state from the obligation to pay the commissioners the money they would have earned subsequent to its repeal, had it remained in force. If that were true, the construction of the statute would not be thereby changed; but counsel are in error, for no such result would follow the repeal of the statute. The case relied on by them in this connection is Hall v. Wisconsin, 103 U. S. 5, 26 L. Ed. 302. In that case, as was said by the Supreme Court of the United States in the later case of State of Missouri ex rel. Walker v. Walker, 125 U. S. 339, 8 S. Ct. 929, 932, 31 L. Ed. 769: "The question was whether his [Hall's] employment was an office, or under a contract for work and labor; and it was held to be under a contract, because, although he was appointed a commissioner to make a 'geological, mineralogical, and agricultural survey of the state,' the law providing for the survey and for his appointment required that the governor 'make a written contract' with him for the performance of his allotted work, and 'the compensation therefor;' and it also declared that 'such contract shall expressly provide that the compensation to such commissioner shall be at a certain rate per annum, to be agreed upon, and not exceeding the rate of two thousand dollars per annum, and that payment will be made only for such part of the year' as he may actually be engaged

in the discharge of his duty as such commissioner. The contract actually entered into was, by its terms, 'to continue till the 3d day of March, 1863, unless the said Hall should be removed for incompetency or neglect of duty, . . . or unless a vacancy shall occur in his office by his own act or default.' In deciding this case, it was said: 'In a sound view of the subject, it seems to us that the legal position of the plaintiff in error was not materially different from that of parties who, pursuant to law, enter into stipulations, limited in point of time, with a state, for the erection, alteration, or repair of public buildings, or to supply the officers or employees who occupy them with fuel, light, stationery, and other things necessary for the public service.' There was in that case a positive contract by the state for employment in a particular service, for a particular term, made under the authority of law; and because it was such a contract the state could not, any more than a private individual, rescind it at will. The employment in this case, however, has no such provision. There is no agreement as to time, and the matter stands precisely as that of Hall would if a statute had been passed authorizing a geological, mineralogical, and agricultural survey of the state, and he had been employed to make it, and receive for his services a compensation dependent on the amount of work actually done, or the time actually employed. It would hardly have been contended that, under such a contract, the state could not stop the survey, and require Hall to quit work, at any time it pleased. The difference between the two cases is the difference in the two contracts.''

Walker was appointed a commissioner to discharge special and transient duties as were the commissioners here, and, before those duties were fully discharged, the statute was repealed. Walker claimed the compensation he would have earned had the statute not been repealed.

The court held that he was not entitled thereto, and distinguished the case from the Hall case, pointing out that Walker had been granted a mere power with no interest in the thing to be accomplished by the exercise of the power, and that a grant of a power, not coupled with an interest, is revocable at the grantor's pleasure. This is one of the most familiar rules of the law, and has been frequently applied by this court, particularly in Kolb v. Bennett Land Co., 74 Miss. 567, 21 So. 233, where the Walker case was cited with approval.

The duties to be discharged by the state hospital removal, etc., commission are not a part of the regular and permanent administration of justice, but are special and transient, and all of its powers cease when its duties have been discharged. Its members, therefore, are not public officers within the meaning of the Constitution and statute.

It is clear from the statute and its legislative history that the legislature did not understand that in enacting the statute they were creating public officers, and it is not without value here to point out that in providing for the discharge of special and transient public duties by commissioners, with no prescribed term of service, the legislature followed its long-established custom, and that neither our legislative nor judicial history discloses that such commissioners had theretofore been thought to be public officers.

In 1832, a commission was appointed for the construction of public buildings. Hutch. Miss. Code, 306.

In 1844, a commission was appointed for the construction of the University of Mississippi Buildings. Hutch. Miss. Code, 709.

In 1848, a commission was appointed for the construction of the original buildings of the present insane hospital on a designated lot, with authority, if the lot was unsuitable therefor, to sell it, purchase another, and construct the buildings thereon. Hutch. Miss. Code, 227.

By chapter 75, Laws of 1894, a state penitentiary farm was established, and a commission was appointed to purchase land therefor.

Under chapter 55, Laws of 1900, a commission was appointed for the construction of the present state capitol.

Under chapter 108, Laws of 1904, a commission was appointed to sell the land on which the state's institution for the deaf and dumb was then located, to purchase another site, and construct the necessary buildings thereon.

Under chapter 113, Laws of 1926, a commission was appointed to construct or repair buildings at the Mississippi State College for Women, State Teachers' College, Mississippi School and Colony for the Feeble-minded, and University of Mississippi.

These are but some of the numerous commissions that have been created by the legislature for the discharge of a large variety of special and transient public duties.

Since the duties to be discharged by the state hospital removal, etc., commission are not continuing in their nature, but are special and transient, it will not be necessary for us to determine whether these duties include the other elements of a public office.

Affirmed.

**Ethridge, J.**, being disqualified, did not participate in the decision of these cases.

**Griffith, J.**, delivered the concurring opinion.

Upon the precise question with which the opinion of the court deals, namely, whether the commissioners are public officers, there has heretofore been no express decision in exact point in this state; and when the decisions in other states are examined, there are found two lines of judicial interpretation, one to the effect that

such commissioners are employees or contractors, and the other that they are officers. Although most of those cases deal with commissions which had no substantial basis for any claim of more than a purely transient and clearly temporary nature, yet, even as to these, many of the courts have differed, so that all that can truly be said of the actual state of the authorities is that they are hopelessly divided on the subject. Our court in reaching a decision in this case has been influenced, as will be apparent from the opinion in chief, by the fact that on occasions heretofore commissions for building purposes and the like have been created in this state, and that these have not been challenged. And certainly not, for never before, so far as research has placed before us, has any commission with such powers of continuation in their places, at their own discretion, ever been created in this state, or in any other state, so far as the diligence of counsel has brought to our attention, except in the case of the Florida purchase centennial commission, which was promptly declared unconstitutional by the Supreme Court of that state, in State v. Jones, 79 Fla. 56, 84 So. 84.

But leaving aside the division of the authorities throughout the country on the question whether these commissioners should properly be held to be, or not to be, officers, and accepting the conclusion of the opinion in chief that they are not officers, then I am of the opinion that the decision should go further, and as was done with the only similar act, found in the books in respect to the features hereinafter mentioned, namely the Florida act, we should declare this entire act unconstitutional and void, and that the positions are not offices, because in the real and basic law they are nothing, do not exist, call them what we may.

The opinion in chief does not mention, except as may be implied, the constitutionality of the act. This is, of course, upon the general principle that courts will not

decide constitutional questions unless raised by the parties, and certainly, the parties here would not raise the question, for a decision that the statute is unconstitutional would put both sides out of any place, whether of office or employment. But the rights of the public are involved here, not so much in the present as in the future, and the personal attitude of individual litigants ought not be permitted to becloud the inherent issue which the facts of themselves present in such a situation as is here before us. And unless some notice be given to the point, exactly that will be done in the future which has been done now, in the references to commissions in the past, except more, in that this act will be referred to as having traversed the entire course of authoritative approval as to all inherent features, and thus will furnish an argument, and in practical effect a precedent, for action in the days that are to come. For that reason, it seems to me, the question should be noticed, and I therefore outline briefly what in my opinion is the result produced by the decision in this case, namely, that the entire act is unconstitutional and void, and that there is neither an office nor an employment in the case.

There are certain retained and fundamental rights of the people, the continued existence and perpetuation of which are assumed as a part and parcel of the foundations of their written constitution; and the opening and concluding clauses of the bill of rights in our Constitution refers broadly to those essential conceptions, namely, that "all political power is vested in and derived from the people; all government is founded upon their will only," and that "the enumeration of rights in this constitution shall not be construed to deny and impair others retained by, and inherent in the people." It is of the very spirit of constitutional government in this state that those who exercise a part of the sovereign power of government shall, at fixed intervals of reasonable periods, return to the people an account of their conduct

and submit to the people, as a fundamental and inherent right of the people, whether those so exercising said powers shall be continued in the exercise of that power. And it certainly cannot be controverted, as a settled principle of constitutional law, that acts inconsistent with the spirit of the Constitution, inconsistent with its assumed fundamentals, contrary to the general scope and purpose thereof, are as much within its prohibitions as if forbidden by the express letter of some of its particular provisions.

It is not seriously disputed but that the commission in this case is vested with a portion of the sovereign power of the state, in fact with a considerable portion, as a casual reading of the act in question will disclose; in fact, further, within the area of its operations and in respect to more than one million dollars worth of the most valuable available property owned by the state, its powers are practically without effective limitation. And the act (Laws 1926, chap. 115) carries in section 14 and the subsequent sections thereof provisions of the amplest nature by which the commission is vested, not only with every essential power and discretion in respect to the disposition of more than one million dollars worth of the state's most valuable lands, but is expressly given the power to do this only when in the absolute discretion of the commission it shall decide to do so. One of the provisions, and which is illustrative of several others to the same effect as contained in this act, is as follows: "The commission is authorized and empowered to sell said property divided into parcels and/or lots, but not as a whole. The commission is otherwise granted plenary power, authority and discretion as to the manner and time at which and how it shall market said property, with authority to market the same in its discretion so as to place the property on the market in the most gradual advantageous manner, and so as not to affect its value by too large an offering at one time."

It is manifest that under the provisions of the quoted section, and of the others which it illustrates, these commissioners, exercising far-reaching and important powers of the state, with all their numerous employees, may at their own election remain in their positions, if only they will to do so, for the period of their natural lives, and their successors at their death may do the like for the lives of the successors, and all this, without responsibility to any other authority on earth, without the slightest supervision and control from any quarter, and, unless the repeal of the act can be secured, they are safely beyond the reach of any human power but their own.

Is this not a startling proposition to put before the people of this state, and would it not be even more startling to say that such a thing is within the Constitution which they have ordained for the protection and preservation of their government and of their public rights and public concerns?

What is said here has no reference to present litigants. We are not here concerned with particular persons; nor do we refer to any supposed purposes of the present commission. We are concerned only with what could be done by them, or their successors, or by the persons on any commission of such unguarded powers and privileges. We are concerned therefore, or should be, with great governmental principles, which will extend far beyond the time when we who are here to-day will, all of us, be long dead and perhaps forgotten. It is the consequences of the future with which we should be concerned; the present amounts to but little, except as it projects into the future. And we know much of the future by the dangers that have come upon us in the past. What if in future years, a trafficking legislature and a complaisant governor should proceed to contract out to their favorites the public lands, the public contracts, and the public works of this state? Would they not have a model, from

which to fashion their plans, in the very acts which we have here before us, and could they not be astute enough to embody their legislation into elaborate written contracts and thereby come squarely within Hall v. Wisconsin, 103 U. S. 5, 26 L. Ed. 302, and make their action irrepealable by a subsequent legislature? What would have happened in the dark days of 1871 to 1875 if the venal aggregations then sitting as legislators had thought of such a scheme as this? And worse still, if such legislation as this is valid, the members of the legislature can themselves be the commissioners or contractors, and could parcel out the public property and public works of the state to themselves during their natural lives. Could anything be more monstrous in a free government among free people?

I maintain therefore, and repeat, that we should declare that, as a result of this decision, this entire act is void, and that there are no positions within it to be occupied or filled—call them offices, employments, or contracts, or whatever name may be chosen; we should by such a declaration make it impossible to endanger the safety of representative government in the future by any such menacing legislation.