Elnora SOREY, Individually and as Personal Representative of the Wrongful Death Beneficiaries of Eric Sorey, Deceased, and as Personal Representative of the Estate of Eric Sorey, Deceased, Plaintiffs,

v.

Boyd A. KELLETT, M.D.; Earnest L. Harrington, R.P.T.; John Doe, Assistant Trainer; Jane Doe, R.N.; William H. Austin, Jr.; George T. Watson; Martha H. Gill; Denton Rogers, Jr.; Charles C. Jacobs, Jr.; Bryce Griffis; Betty A. Williams; John R. Lovelace, M.D.; Frank O. Crosthwait, Jr.; William A. Hickman; Sidney L. Rushing; Thomas D. Bordeau; William M. Jones; Jim Carmody; and The University of Southern Mississippi, Defendants.

Civ. A. No. J87–0023(B).

United States District Court,
S.D. Mississippi,
Jackson Division.

Oct. 15, 1987.

John M. Deakle and Joanna Robertson, Deakle & Deakle, Hattiesburg, Miss., and J. Keith Givens, Dothan, Ala., for plaintiffs.

Dorrance Aultman and Patricia Trantham, Aultman, Tyner, McNeese & Ruffin, Ltd., Hattiesburg, Miss., for Dr. Boyde A. Kellett.

Robert L. Gibbs, Office of Atty. Gen., State of Miss., Jackson, Miss., for all other defendants.

## MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

This cause is before the Court on Motions to Dismiss or for Summary Judgment filed by the numerous Defendants in this action. Plaintiff, Elnora Sorey, sued in this Court for damages arising out of the death of her son Eric Sorey. Eric Sorey was a football player at the University of Southern Mississippi (USM) and became ill at practice. He was admitted to the USM on-campus clinic and later transferred to a Hattiesburg, Mississippi, hospital where he died. Plaintiff, a resident of Florida, asserted jurisdiction under diversity of citizenship, 28 U.S.C. § 1332 and under 42 U.S.C. § 1983. Her claimed right to recovery is based on 42 U.S.C. § 1983, the Mississippi Wrongful Death and Survival Statutes, *Miss. Code Ann.* §§ 11–7–13 and 91–7–233 (1972), and breach of contract. Named as Defendants in their official and individual capacities are members of the Board of Trustees of the State Institutions of Higher Learning (College Board), William H. Austin, Jr., George T. Watson, Martha H. Gill, Denton Rogers, Jr., Charles

C. Jacobs, Jr., Bryce Griffis, Betty A. Williams, John R. Lovelace, M.D., Frank O. Crosthwait, Jr., William A. Hickman, Sidney L. Rushing, Thomas D. Bordeau, and William M. Jones, who along with Defendants Earnest L. Harrington, the head trainer at USM, and Jim Carmody, head football coach at USM, have moved to dismiss or for summary judgment. The team physician, Boyd A. Kellett, sued in his official [1] and individual capacities, has moved to dismiss, or for summary judgment, or for change of venue. Defendant USM has also moved to dismiss.

In her original and amended complaints, Plaintiff charges that Harrington and Kellett [2] were negligent in treating her son after he collapsed at football practice on August 7, 1986 and that Coach Carmody failed to perform a non-delegable duty of responsibility for the custody and care of football players. No specific allegations are made against USM. The alleged liability of the College Board in their official and individual capacities is based upon a failure to provide sufficient funds to USM and its clinic which resulted in the hiring of incompetent personnel. Defendants are all alleged to be officials or employees of the State of Mississippi who were acting under color of state law and pursuant to state policies. In sum, the claims under Section 1983, wrongful death and survival are all premised on negligence. The breach of contract claim asserted in the amended complaint is based on the failure to provide certain benefits listed in a grant-in-aid agreement.[3]

All of the Defendants except USM have moved to dismiss or for summary judgment on the grounds that the Complaint fails to state a claim upon which relief may be granted, that they are immune from this action under the applicable law of the State of Mississippi, and that allegations of negligence against them fail to state a claim under 42 U.S.C. § 1983. In support of its motion to dismiss, USM relies on sovereign immunity, the Eleventh Amendment (as a bar to the Section 1983 claim), failure to state a claim and improper service of process. Each of the alternative grounds will be discussed as they apply to particular defendants.

Defendants have asserted that since this is a diversity case, this Court is bound by *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) to apply the Mississippi law of sovereign immunity.[4] As will be elaborated upon below, only the members of the College Board are entitled to assert an immunity defense. Moreover, it is erroneous to claim that this Court is *Erie*-bound to apply the Mississippi state law of sovereign immunity when the pertinent limitation on the exercise of this Court's power is the Eleventh Amendment to the Constitution which states that

> [t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any foreign state.

The state itself need not be named as a party to the action for it to be barred by the Eleventh Amendment. "[W]hen the action is in essence one for the recovery of money from the state, the state

---

1. Kellett is named in an official capacity as "health care officer."

2. Plaintiff also asserts that her son was treated by Jane Doe, a registered nurse at the clinic, and John Doe, an assistant trainer. The identity of these parties was not revealed to the Court at the time of the filing of this Motion and they have not been served with process.

3. The grant-in-aid agreement certifies that Eric Sorey was to be provided tuition, fees, room, board and medical care in exchange for his participation in the football program at USM. The agreement, effective fall 1985 for a period of one year, bears the signature of head coach Jim Carmody, as being recommended by him, and was approved by the Director of Financial Aid at USM.

4. This argument assumes that the state or its alter ego is a citizen for the purposes of diversity jurisdiction. However, it is "well settled that a suit between a state and a citizen of another state is not a suit between citizens of different states for purposes of diversity of citizenship jurisdiction." *Illinois v. City of Milwaukee*, 406 U.S. 91, 97 n. 1, 92 S.Ct. 1385, 1390 n. 1, 31 L.Ed.2d 712 (1972).

is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though the individual officials are nominal defendants." *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). Consequently, relief sought nominally against an officer or a state entity is in fact against the sovereign if the decree would operate against the latter. *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1983) (*quoting Hawaii v. Gordon*, 373 U.S. 57, 58, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963)).

By its express terms, the Eleventh Amendment is a limitation on the judicial power, that is the jurisdiction of the federal courts. *See Pennhurst*, 465 U.S. at 99 n. 8, 104 S.Ct. at 907 n. 8. Contrary to Defendants' assertions, *Erie Railroad v. Tompkins* involves not jurisdiction, but the application of state substantive law when a federal court exercises subject matter jurisdiction based on diversity of citizenship. That jurisdiction in this case is based on diversity of citizenship does not preclude application of the Eleventh Amendment. *Cf. Karpovs v. State of Mississippi*, 663 F.2d 640, 643–44 (5th Cir.1981) (state negligence claims and federal admiralty claims for damages against State of Mississippi and state agency barred by Eleventh Amendment); *Blake v. Kline*, 612 F.2d 718, 721 (3rd Cir.1979) (applying Eleventh Amendment bar to diversity action against state agency). *See also Mohler v. State of Mississippi*, 782 F.2d 1291, 1292 (5th Cir. 1986) (district judge dismissed on state law sovereign immunity; Fifth Circuit affirmed because Eleventh Amendment is jurisdictional bar).

Since the Eleventh Amendment bars claims for monetary damages against the state, the question before this Court becomes whether USM and the members of the College Board, sued in their official capacities, are the state for purposes of the Eleventh Amendment. To determine whether the Eleventh Amendment bars suit against a particular state agency, the Court must examine the powers and characteristics of the state agency as it is constituted by state law. However, while the degree of independent autonomy and control is a consideration, more important is whether the funds to defray any award would be derived from the state treasury. *See Wheeler v. Mental Health and Mental Retardation Auth.*, 752 F.2d 1063, 1072 (5th Cir.1985) (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977)). *See also Jacintoport Corp. v. Greater Baton Rouge Port Com'n.*, 762 F.2d 435, 442 (5th Cir.1985) (analyzes extent of agency's independent management authority), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 797, 88 L.Ed.2d 774 (1986).

USM is clearly an alter ego of the State of Mississippi. The legislature has defined it as such, *see Miss. Code Ann.* § 11–46–1(g), as has the Mississippi Supreme Court, *Bruner v. Univ. of Southern Mississippi*, 501 So.2d 1113, 1115 (Miss. 1987). Moreover, the Court of Appeals for the Fifth Circuit has held that educational institutions operated by the state are state agencies for the purposes of the Eleventh Amendment. *See Clay v. Texas Women's Univ.*, 728 F.2d 714, 715–16 (5th Cir.1984); *United Carolina Bank v. Bd. of Regents*, 665 F.2d 553, 557 (5th Cir.1982). Thus any action for damages against USM is barred by the Eleventh Amendment.[5]

The College Board was created by the legislature and charged with the management and control of state institutions of higher learning.[6] *Miss. Code Ann.*

---

**5.** USM also moved to dismiss for failure to state a claim. In opposition to this, Plaintiff cites two cases for the proposition that medical institutions, in this case the USM clinic, are liable for the negligence of their employees. *Hardy v. Brantley*, 471 So.2d 358, 371 (Miss.1985); *Biloxi Hospital, Inc. v. Frazier*, 245 Miss. 185, 146 So.2d 882 (1962). The cases do not support the result Plaintiff seeks. Neither of the defendant hospitals in *Hardy* or *Frazier* were publicly owned and operated institutions. The USM clinic, which is not separately named as a Defendant, is part and parcel of USM and as such is entitled to Eleventh Amendment Immunity.

**6.** Specifically, these institutions are the University of Mississippi, the Mississippi State Univer-

§ 37–101–1 (1972). The members of the College Board are appointed by the governor. *Id.* at § 37–101–3. The general powers and duties of the College Board are codified at *Miss. Code Ann.* § 37–101–15 and include the following: control of the use, distribution and disbursement of all funds, appropriations and taxes levied by the state for use of the institutions; general supervision of the affairs of all the institutions[7]; to report annually to the legislature on appropriations to the institutions; election of the heads of all institutions; and contracting with the deans, professors and teaching staff. The remainder of the statutory scheme provides detailed guidance as to the manner in which the College Board should exercise its authority on behalf of the state of Mississippi. *See generally Id.* at § 37–101–17.

■ The detailed statutory scheme for the creation and operation of the College Board demonstrates that it is an extension of the State of Mississippi which exercises sovereign authority on State's behalf. Any award of damages against the College Board members in their official capacities would be satisfied out of state funds. Thus, any action for damages against the College Board members acting in their official capacities is barred by the Eleventh Amendment.

■ Although the Eleventh Amendment bars a claim for damages against College Board members sued in their official capacities, it does not protect them from liability as individuals. *See Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985); *American Civil Liberties Union of Mississippi v. Finch,* 638 F.2d 1336, 1341 (5th

Cir.1981). However, the defense of qualified immunity can protect public officials from individual liability.[8] *See Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1981); *Procunier v. Navarette,* 434 U.S. 555, 561–62, 98 S.Ct. 855, 859–60, 55 L.Ed.2d 24 (1977); *Wood v. Strickland,* 420 U.S. 308, 321, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975). Qualified or good faith immunity contains both objective and subjective elements; the objective element involves a presumptive knowledge and respect for basic constitutional rights while the subjective component refers to "permissible intentions." *Harlow,* 457 U.S. at 815, 102 S.Ct. at 2737 (*quoting Wood,* 420 U.S. at 322, 95 S.Ct. at 1001). In referring to both the objective and subjective elements, the United States Supreme Court has

> held that qualified immunity would be defeated if an official *"knew or reasonably should have known* that the action that he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], *or* if he took the action *with the malicious intention* to cause deprivation of constitutional rights or other injury."

*Harlow,* 457 U.S. at 815, 102 S.Ct. at 2737 (*quoting Wood,* 420 U.S. at 322, 95 S.Ct. at 1001).

■ The *Harlow* court addressed an argument made by Plaintiff in opposition to Defendants' Motion. Plaintiff asserts that dismissal on the grounds of qualified immunity is premature as there has been no discovery and qualified immunity presents factual issues. The Supreme Court in *Harlow* rejected this argument stating that "bare allegations of malice should not suffice to subject government officials to ei-

---

sity of Agriculture and Applied Science, Mississippi State College for Women, the University of Southern Mississippi, Delta State College, Alcorn Agricultural and Mechanical College, Jackson State College and Mississippi Valley State College.

7. This includes entrance requirements, care of the buildings and grounds, the power to adopt the by-laws and regulations governing the institutions, preparation of an annual budget for each institution and "all matters incident to the proper functioning of the institution." *Id.*

8. This Court recognizes that it is not free to dismiss a claim on the grounds of qualified immunity unless the affirmative defense has been asserted by the defendant. *See Saldana v. Garza,* 684 F.2d 1159, 1163 n. 13 (5th Cir.1982). Plaintiff does not raise the issue of whether Defendant has pled qualified immunity, but in the absence of any protestations by Plaintiff, the Court is of the opinion that Defendants' claim of immunity under state law suffices as a plea of qualified immunity.

ther the costs of trial or to the *burdens of broad-reaching discovery.* We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow,* 457 U.S. at 817–18, 102 S.Ct. at 2738 (emphasis supplied). Thus, it is entirely proper that this Court consider qualified immunity on a motion to dismiss.

▮ The allegations made by Plaintiff in her brief in response to the Motion to Dismiss are more specific than those made in the Complaint and Amended Complaint; consequently, in determining whether plaintiffs have overcome the defense of qualified immunity the Court will consider the allegations in Plaintiff's brief. *See Jacquez v. Procunier,* 801 F.2d 789, 793 (5th Cir.1986). College Board members:

(1) accepted and undertook the statutory responsibility for allocating the funding, supervision and maintenance of the facility at the USM clinic;

(2) hired inadequate and incompetent personnel to staff the USM clinic and as athletic trainers, in that neither the team physician nor the athletic trainers were able to recognize, diagnose or treat a case of sickle cell crisis, which is common among black athletes;

(3) intentionally provided inadequate facilities, by allocating insufficient funding for the USM clinic; (it is less than one-third of the amount allocated for the clinics at Mississippi State and Ole Miss).

(4) entered into a contract with Eric Sorey, which was breached by the aforesaid acts and omissions.

▮ Plaintiff asserts that her Complaint meets the specificity requirement of *Elliot v. Perez,* 751 F.2d 1472, 1477–78 (5th Cir.1985) but she reserves the right to amend her complaint if this Court finds it is insufficient to overcome the qualified immunity defense. The Fifth Circuit has

stated that "plaintiffs cannot be allowed to continue to amend or supplement their pleadings until they stumble upon a formula that carries them over the threshold" of defeating qualified immunity. *Jacquez,* 801 F.2d at 792. This Court is of the opinion that as Plaintiff has filed both a complaint and an amended complaint along with extensive briefs [9], she has made her "best case" and the Court may consider whether the College Board members are entitled to qualified immunity. *See Morrison v. City of Baton Rouge,* 761 F.2d 242, 246 (5th Cir.1985).

▮ Based on this Court's earlier discussion of the statutory structure and authority of the College Board, it is clear that the actions which Plaintiff alleges to support liability of the members of the College Board were all taken within the scope of the College Board's statutory authorization. Plaintiff has failed to allege any *constitutional* right to adequate funding or competent personnel and cites no case for the proposition that Eric Sorey had a clearly established constitutional or federal statutory right to such personnel or facilities. There is only a bare allegation of malicious intent and no claim the College Board members acted beyond the scope of their statutory authority in taking actions which may or may not have affected Eric Sorey.

▮ Even if the College Board members sued in their individual capacities were not entitled to qualified immunity, the Court notes that there are ample alternative grounds to support dismissal of the causes of action against them. The United States Supreme Court has held that the due process clause of the Fourteenth Amendment is simply not implicated by a negligent act of an official which causes unintended loss of life, liberty or property. *See Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon,* 474 U.S. 344, 106

---

9. The facts asserted by Plaintiff in her briefs are necessarily the same as those she would plead in a second amended complaint; therefore, fur-

ther amendment of Plaintiff's pleading would not assist the Court in ruling on Defendants' motions. *See Jacquez,* 801 F.2d at 792.

S.Ct. 668, 670, 88 L.Ed.2d 677 (1986)[10]. Thus, Plaintiff's Section 1983 claims against the College Board members should be dismissed for this reason also. As to the state law claims for wrongful death and breach of contract, state law sovereign immunity would bar these claims against the College Board. In *Pruett v. City of Rosedale*, which abolished the doctrine of sovereign immunity as it applied to ministerial acts[11], the Court stated that

> [w]e do not abolish by this opinion the historical and well-recognized principle of immunity granted to all *legislative, judicial* and *executive bodies* and those *public officials who are vested with discretionary authority*, which principle of immunity rests upon an entirely different basis, and is left intact by this decision.

*Pruett v. City of Rosedale*, 421 So.2d 1046, 1052 (Miss.1982) (emphasis supplied). The Mississippi Supreme Court has since held that public officials of the State, elected or appointed, enjoy immunity from a civil action for damages when they are acting in the performance of official functions which are discretionary in nature. *See Hudson v. Rausa*, 462 So.2d 689, 696 (Miss.1984). The acts and omissions alleged by Plaintiff to support liability were taken within the scope of the College Board's statutory authority. These are clearly discretionary or policy-making functions for which, under the doctrine of sovereign immunity, College Board members cannot properly be held liable individually. Additionally, the Court holds the College Board members cannot be held liable individually for the breach of contract claim. None of the Board members is a party to that contract. The law in Mississippi is well established that for a public board to be liable for breach of contract, an enforceable contract must appear on the minutes of the public board and be made in conformity with the pertinent statute. *See Bruner v. Univ. of Southern Mississippi*, 501 So.2d 1113, 1113 (Miss.

1987). There is no allegation that this grant-in-aid agreement appeared on the minutes of the College Board and grant-in-aid agreements are not specifically within the statutory authority of the College Board. USM and the members of the College Board, in both their official and individual capacities, are entitled to dismissal.

The Court must next consider the Motion to Dismiss of Defendants Carmody, Kellett and Harrington. Plaintiff claims to be suing all three individually and in their official capacities as they are employed at USM. The Mississippi Supreme Court has drawn the following distinction between public employees and public officers.

> A position is a public office, under all of the former decisions of this court, when it is created by law, with duties cast upon the incumbent which involve an exercise of some portion of the sovereign power, in the performance of which the public is concerned, and which are also continuing in their nature; while a public employment on the other hand, is a position which lacks one or more of the foregoing elements.

*State v. McLaurin*, 131 So. 89, 90, 159 Miss. 188 (1930). Public office implies the delegation of the sovereign power and the possession of it by an individual filling an office. *See Damon v. Slaughter*, 101 So. 2d 342, 344–45, 233 Miss. 117 (1958); *see also Golding v. Armstrong*, 97 So.2d 379, 382, 231 Miss. 889 (1957) (essential distinction between public employment and public office is that powers and duties of office are prescribed by law while in employment duties are prescribed by contract).

In their Complaint, Plaintiffs aver that the football program at USM is a private, for profit undertaking and therefore the individuals directing the program are not protected by the doctrine of sovereign im-

---

**10.** The Court recognizes that Plaintiff alleges intentional conduct. However, legal conclusions, couched as factual allegations, need not be accepted as true for purposes of stating a claim. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. *See also Papasan v. Allain*, — U.S. —, 106 S.Ct. 2932, 2942, 92 L.Ed.2d 209 (1986).

**11.** The Mississippi legislature, after *Pruett v. City of Rosedale*, reinstated by statute sovereign immunity for ministerial acts. *See* Miss. Code Ann. § 11-46-1, *et seq.*

munity.[12] This argument aside, the Court is of the opinion that the "offices" held by these defendants do not conform to the definition of public office under Mississippi law. The positions are not created by statute, and the Court reasonably assumes that these defendants hold their positions under oral or written employment contracts. Accordingly, the Court is of the opinion that no claim can exist against Carmody, Harrington or Kellett in an official capacity and they can only be subject to suit as individuals.

■ Defendants Carmody, Kellett and Harrington have moved for summary judgment on the grounds that the Complaint fails to state a claim upon which relief may be granted, that they are immune from suit under the applicable law of Mississippi, and that allegations of negligence do not state a claim under Section 1983. Noting that these Defendants are all alleged to have undertaken the care and treatment of Plaintiff's decedent in an inefficient, careless and negligent manner, and based on the preceding discussion of negligence and Section 1983, the Court is of the opinion that no cause of action has been stated against these Defendants under Section 1983.

■ The remaining claims for wrongful death and breach of contract must be considered with reference to the Mississippi law of sovereign immunity. *Cf. Rutledge v. Ariz. Bd. of Regents,* 660 F.2d 1345, 1350 (9th Cir.1981) (Eleventh Amendment not applicable to bar suit against football coaches where they were alleged to have committed common law tort while in the scope of their employment) *aff'd sub nom, Kush v. Rutledge,* 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983). In support of their respective Motions to Dismiss, Defendants Carmody, Kellett and Harrington rely on the Mississippi law of sovereign immunity. In *Hudson v. Rausa,* 462 So.2d 689, 690 (Miss.1984) the Mississippi Supreme Court held that employees of the State Department of Health, who are in

effect acting as officers of the State, are entitled to immunity for discretionary acts taken in the scope of their employment. The plaintiff sued under the wrongful death statute, *Miss. Code Ann.* § 11-7-13, alleging that her husband's death was caused by the negligence of a doctor and nurse who were employed by the State Department of Public Health. The doctor, as the district health officer, and the nurse, an employee of a subdivision of the State Board of Health, vaccinated plaintiff's decedent for tuberculosis in accordance with the policies of the State Board of Health concerning the state's tuberculosis control program. *Id.* at 692-93. After quoting at length from the exhaustive rules and regulations governing the tuberculosis control program, the court cited the discussion of discretionary acts contained in *Pruett v. City of Rosedale,* 421 So.2d 1046, 1051-52 (Miss.1982).

Both *Pruett* and *Hudson* emphasize that discretionary decisions are by their nature, policy decisions. Public officials, or public employees, are entitled to immunity for consequences which may result in making such decisions because "judges and jurors are in no better position to evaluate the reasonableness of *policy determinations* than those officials who were charged with making them." *Hudson,* 462 So.2d at 694 (*quoting Pruett,* 421 So.2d at 1051) (emphasis supplied). The *Hudson* defendants were entitled to immunity because they were "vested with raw discretion in formulating policies and carrying out detailed treatment in order to prevent the spread of tuberculosis or other communicable diseases." *Hudson,* 462 So.2d at 695.

■ The position of these Defendants as employees of USM differs markedly from those of the *Hudson* defendants. Even though Kellet and Harrington are health care professionals, they were not charged with administering a public health program while the *Hudson* defendants made discretionary decisions in the administration of a statewide public health pro-

---

12. The Court observes that it is patently inconsistent for Plaintiff to maintain that Carmody, Herrington and Kellet can be sued in their "offi-

cial capacities" while at the same time asserting that the football program at USM is not an exercise of the sovereign power.

gram. These defendants, in their treatment and care of plaintiff's decedent, were not acting to further any public health goal but were simply administering medical care. In sum, the *Hudson* defendants were public officials who administered a public health plan; these Defendants are employees of the State who allegedly were negligent in treating one individual. Coach Carmody's position is even more remote than Kellet's and Harrington's from any public policy goals. The Court is of the opinion that Mississippi sovereign immunity was not intended to go so far as to protect all employees of the state from any individual tort liability for actions taken in the scope of their employment.[13] Such a conclusion would eliminate the distinction between ministerial and discretionary functions and offer absolute protection from tort liability which has lost favor with the courts. *See Hudson,* 462 So.2d at 694 (citing *Pruett,* 421 So.2d at 1051). *Cf. Burnham v. Tabb,* 508 So.2d 1072, 1072 (Miss. 1987) (in medical malpractice action, Madison County Hospital dismissed on grounds of sovereign immunity; defendant doctor who worked at hospital dismissed on voluntary nonsuit); *McKlemurry v. University Medical Center,* 380 So.2d 251 (Miss.1980) (sovereign immunity barred malpractice suit against University hospital).

 Finally, Defendants Carmody, Kellett and Harrington assert that the allegations of the Complaint fail to state a claim against them. In determining whether a complaint states a claim, factual allegations must be accepted as true and all allegations must be construed in the light most favorable to the plaintiff. *See Mann v. Adams Realty Co., Inc.,* 556 F.2d 288, 293 (5th Cir.1977). Under Federal Rule of Civil Procedure 8(a)(2), a party need only provide a short, plain statement of the claim showing that the pleader is entitled to relief. Upon review of the allegations for negligence and breach of contract, the Court is of the opinion that as to these three Defendants, the Complaint should not be dismissed for failure to state a claim. Similarly, the Court is of the opinion that due to the existence of genuine issues of material fact, these Defendants are not entitled to summary judgment under Federal Rule of Civil Procedure 56.[14]

Accordingly, the motions to dismiss of the College Board and USM are granted. The Motions to Dismiss of Defendants Kellet, Carmody and Harrington, as to claims under Section 1983, are granted but the remainder of their motions are denied. Accordingly, this suit will proceed as a diversity of citizenship action on the state law claims against Defendants Kellet, Carmody and Harrington.

---

13. Plaintiff relies on *Miss.Code Ann.* §§ 11–46–5 and 11–46–17 (Supp.1986), in asserting that the "immunity doctrine, under Mississippi law, does not bar this action." While the cited statutes waive sovereign immunity for torts, they do so "from and after July 1, 1987, as to the state." § 11–46–5(1). The editor's note to that section quotes the predecessor statute "causes of action that accrue prior to July 1, 1987, as to the state, ... shall not be affected by this act but shall be governed by" prior statutory and case law. As Eric Sorey died in August of 1986, plaintiff's cause of action accrued prior to July 1, 1987 and the statutes are not applicable.

14. Defendant Kellett asserts that he is entitled to dismissal because the Plaintiff's decedent claims a specific amount of damages in violation of *Miss. Code Ann.* § 11–1–59 (Supp.1986). While this statute does prohibit a complaint from specifying the amount of damages claimed against a licensed physician, beyond a statement that the damages claimed are within the jurisdictional limits of the court, the statute by its own terms does not require dismissal of the complaint and Defendant Kellett has cited no case for the proposition that dismissal is appropriate when a complaint fails to comply with the statute. Plaintiff has requested to be allowed to amend her Complaint to cure this defect. Permission will be granted by separate order.